(No. 61830.—)

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DONALD L. BRYANT, Appellee.

*Opinion filed October 17, 1986.*

Neil F. Hartigan, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Terence M. Madsen, Assistant Attorneys General, of Chicago, and John X. Breslin and Terry A. Mertel, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Peter A. Carusona, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Peoria County, the defendant, Donald L. Bryant, was convicted of attempted burglary and sentenced to six years' imprisonment, an extended term. The appellate court granted the defendant a new trial, finding error in the way the jury had been instructed (131 Ill. App. 3d 1011), and we allowed the State's petition for leave to appeal (103 Ill. 2d R. 315(a)).

The offense charged here occurred on August 3, 1983, at a service station in Peoria. David McGraw testified that at about 3 o'clock that morning, as he was sitting on the porch of his father's home, he heard the sound of glass breaking. He inspected the area of his own building and found nothing; several minutes later McGraw heard the noise again, and this time he thought it came from a service station across the street. McGraw walked over to the station, and through the front windows he saw what appeared to be two persons behind the building. McGraw's brother called the police.

Officer Gerald Ulrich of the Peoria police department testified that he was sent to the service station at about 3 a.m. Ulrich went to the rear of the lot and saw the

defendant running away from the building. The distance between the back of the station and the fence around an adjacent yard was about 20 feet, and the defendant was midway between the building and the fence, at the end of the building. Ulrich called for the defendant to stop, but the defendant continued running, jumping the fence. Ulrich shouted a second command, and the defendant then stopped and returned to the service station, where he was arrested. The defendant was not wearing a shirt at the time, and Ulrich found one next to the fence in the neighbor's yard. The shirt was torn, and it had been knotted.

The service station's owner, Fred Strubbe, also testified at trial. Strubbe went to his station at about 4 o'clock that morning, and he found that a chain-link fence covering the rear windows had been pried up and some of the panes of glass had been broken. Strubbe noticed also that several tires had been stacked below the windows, and that inside the building a display of thermostat gaskets had been knocked from its usual position over the windows. Nothing was missing from the building, however, and nothing else had been disturbed.

At trial the State also presented the results of tests on physical evidence. Latent fabric impressions were detected on pieces of glass taken from the area under the rear windows at the service station, and they were found to be consistent with the impression that would be produced by the shirt Ulrich discovered in the neighbor's yard. Also, shards of glass in the defendant's shoes were found to have the same refractive index as the window glass at the service station.

The defendant did not present any evidence. Defense counsel tendered instructions on criminal damage to property as a lesser offense included in the charge of attempted burglary, and counsel also asked that the jury be given the second paragraph of Illinois Pattern Jury

Instruction (IPI), Criminal, No. 3.02 (2d ed. 1981), which expresses the evidentiary burden when all the evidence of guilt is circumstantial. The trial judge refused these instructions, and the defendant was convicted of attempted burglary. With one justice dissenting, the appellate court reversed the conviction and granted the defendant a new trial, finding error in the refusal of the tendered instructions.

The State first argues that criminal damage to property is not an included offense of the crime charged here, attempted burglary. The State believes that the appellate court incorrectly based its decision on the evidence adduced at trial and ignored the language of the indictment, which did not contain any allegation of a mental state necessary to sustain a conviction for criminal damage to property. The effect here, according to the State, is to deprive the prosecutor of his discretion to decide what charges to lodge against a defendant.

The principle is well established that a defendant may be entitled to have the jury instructed on a less serious offense that is included in the one he is charged with. (*Beck v. Alabama* (1980), 447 U.S. 625, 636-37, 65 L. Ed. 2d 392, 401-02, 100 S. Ct. 2382, 2388-89.) The reason for this is clear: an instruction on a lesser offense provides an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense. *Keeble v. United States* (1973), 412 U.S. 205, 212-13, 36 L. Ed. 2d 844, 850, 93 S. Ct. 1993, 1997-98.

The grounds for determining whether a particular offense is included in another are not always clear. Section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 2—9) defines the term "included offense" in the following manner:

" 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein."

As this court has recognized, the definitions provided by section 2—9 do not explain "which of the following is determinative in deciding if a particular offense is an included offense of another: the abstract statutory definition of the greater crime; the greater crime as it is alleged in the indictment or other charging document; or the greater crime as its necessary elements are proved at trial." (*People v. Mays* (1982), 91 Ill. 2d 251, 255.) In *People v. Cramer* (1981), 85 Ill. 2d 92, 98, the court looked at the offense as it was charged and declined to express a view on "whether the evidence as adduced at trial could support a defendant's tendered instruction where the terms of the indictment could not." In a later case, *Mays*, the defendant proposed the adoption of the inherent-relationship test, which looks to the proof presented at trial but requires that the lesser and greater offenses be inherently related; there the court found that the lesser-offense instruction had been properly refused under all the suggested theories and did not adopt a particular one.

Although in *People v. Dace* (1984), 104 Ill. 2d 96, the court expressly declined to adopt the inherent-relationship test, the court held that instructions on lesser offenses should have been given in the two cases consolidated for review there. In reaching that conclusion the court relied on both the language used in the charging instruments and the evidence presented at the trials. The court explained:

"The information in each case charged residential bur-

glary with intent to commit a theft. The proof of the offense charged requires proof of the specific intent (*People v. Toolate* (1984), 101 Ill. 2d 301), and the evidence adduced in each case would support a conviction of theft (*People v. Housby* (1981), 84 Ill. 2d 415). We hold that under these circumstances, where the information charged the specific intent to commit theft and the offense of theft was proved by the evidence, refusal to give defendant's tendered instructions was error." *People v. Dace* (1984), 104 Ill. 2d 96, 102-03.

In this case the trial judge refused to give the included-offense instruction tendered by the defendant because the indictment contained no reference to the value of the damage allegedly caused by the defendant; the trial judge noted also that the State would not be required to provide any evidence of that in proving the charge of attempted burglary. Apparently in recognition of the decision in *People v. Jackson* (1984), 99 Ill. 2d 476, that value is not an element of the offense of theft, the State rests its argument in this court on a different ground. The State now contends that the instruction was precluded because the indictment in this case did not allege a mental state in the defendant's commission of the damage; knowledge is the mental state necessary for the form of criminal damage to property proposed here (see Ill. Rev. Stat. 1983, ch. 38, par. 21—1(a) ("[k]nowingly damages any property of another without his consent")). Without that allegation, the State believes, the instruction could not be given. The State apparently believes that under *Dace* a defense-tendered instruction on a lesser offense may not be given unless the charging instrument specifies the intent to commit the lesser offense or sets forth all its elements.

The indictment in this case was in one count, and it alleged the following:

"He, with the intent to commit the offense of Burglary in violation of Illinois Revised Statutes, Chapter 38, Section

19—1(a), did perform a substantial step toward the commission of that offense in that he pulled away a screen and broke a window of a building known as Strubes 66, located at 700 Spring Street, Peoria, Illinois, with the intent to enter said building without authority, and to commit therein a theft, in violation of paragraph 8—4(a), Chapter 38, Illinois Revised Statutes."

The indictment superseded a one-count information that contained identical allegations.

From our review of the record in this case, we conclude that the instruction tendered by the defendant on the less serious offense should have been given. To the extent that the lesser offense must have a broad foundation in the instrument charging the greater, we believe that the indictment in this case set out the main outline of the lesser offense proposed by the defendant here. The property damage to the building was the obvious foundation of the charge; that the indictment did not expressly allege all the elements of the lesser offense is not, in our view, fatal under these circumstances. Notably, in the two cases consolidated in *Dace*, the lesser offense, theft, was simply named in the charging instruments, and, taken with the evidence introduced at the defendants' trials, that was found sufficient to warrant instructions on the lesser offenses.

Even under the State's view, however, we would find that the indictment here implicitly set out the required mental state of knowledge. The indictment alleged that the defendant, "with the intent to commit the offense of Burglary," pulled away the screen and broke the window "with the intent to enter said building without authority, and to commit therein a theft." As the defendant demonstrates, the form of burglary at issue here required a knowing entry, and therefore the indictment may be read as alleging an attempt to knowingly enter the service station. The absence of an entry, and not the ab-

sence of a fully formed mental state, made the offense inchoate. Indeed, an attempt requires the specific intent to commit an offense, so the defendant in this case could not have been guilty of attempted burglary if he lacked the intent to knowingly enter the building. Because the damage to the building represented the defendant's substantial step toward the commission of the offense, the charging instrument here may be interpreted as containing an implicit allegation that the defendant knowingly caused the damage.

Finally, it should be noted that the defendant's position here is consistent with the view proposed at trial. In his opening statement, defense counsel emphasized to the jury that the charge of attempted burglary would require proof of the defendant's intent to commit a burglary. The evidence introduced at trial showed the defendant's presence at the service station and the occurrence of the damage there, circumstances from which the jury could infer the defendant's responsibility for the damage without also necessarily inferring his intent to commit burglary. Defense counsel apparently thought that the jury might find those circumstances difficult to square with an outright acquittal in this case and therefore decided to tender instructions on criminal damage to property as an included offense. The distinction to be drawn was that between vandalism and attempted burglary. As we have suggested, the evidence presented at trial could have rationally sustained a conviction for the lesser offense and an acquittal on the greater.

In the State's view, requiring the instruction here is the sort of *ad hoc* decision that *Dace* condemned and believed would be the result of adopting the inherent-relationship test. This should be distinguished from *People v. Vasquez* (1981), 97 Ill. App. 3d 1142, which the State cites. In *Vasquez* the defendant was charged with burglary and aggravated battery and, in a bench trial, was

acquitted of those charges but convicted of criminal damage to property as an included offense of burglary. The appellate court reversed the defendant's conviction, holding that criminal damage to property was not an included offense of burglary. The State also believes that requiring the instruction would interfere with the prosecutor's discretion to decide what charges to lodge against a defendant. There are several notable limits on the operation of the included-offense doctrine, however. For example, because a defendant's instruction on a lesser offense is appropriate "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater" (*Keeble v. United States* (1973), 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847, 93 S. Ct. 1993, 1995), the evidence presented in a particular case might rationally preclude the use of an instruction on a lesser offense. (See *Hopper v. Evans* (1982), 456 U.S. 605, 612-13, 72 L. Ed. 2d 367, 373-74, 102 S. Ct. 2049, 2053-54; *People v. Perez* (1985), 108 Ill. 2d 70, 81-83; *People v. Mitchell* (1984), 105 Ill. 2d 1, 14.) Moreover, an included-offense instruction " 'is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.' " (*People v. Cramer* (1981), 85 Ill. 2d 92, 100, quoting *Sansone v. United States* (1965), 380 U.S. 343, 349-50, 13 L. Ed. 2d 882, 887-88, 85 S. Ct. 1004, 1009.) Thus, instructions on less serious offenses are not required in every case.

Because the defendant must be tried again, it is appropriate to consider here those questions raised by the parties that are likely to recur on retrial. The appellate court also found error in the trial judge's refusal to give the jury the second paragraph of the instruction on circumstantial evidence, IPI, Criminal 2d, No. 3.02. The full instruction says:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [(the) (a)] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

According to the committee note accompanying the instruction, the second paragraph, or the "reasonable theory of innocence" charge, should be used only when all the proof of guilt is circumstantial, and the first paragraph, which explains what circumstantial evidence is, should not be used when all the evidence is direct.

As an initial matter we consider the State's contention that the record contained direct evidence of the defendant's guilt, which therefore precluded use of the second or "reasonable theory of innocence" paragraph in the instruction. The State believes that Officer Ulrich's testimony provided direct evidence of the defendant's presence and conduct at the scene of the offense. The trial judge here declined to give the second or "reasonable theory of innocence" charge because he believed that there was some direct evidence of the defendant's guilt. Specifically, the judge pointed to the defendant's proximity to the scene of the offense, his flight when the police arrived, and the presence of his shirt near the fence behind the service station. The appellate court believed instead that all the evidence of guilt was circumstantial, for there was no eyewitness testimony of the occurrence.

The distinction between direct and circumstantial evidence often is difficult to draw, but we believe that Officer Ulrich provided direct—or eyewitness—testimony not of the defendant's commission of the offense charged

here but rather only of circumstances from which the defendant's guilt could be inferred. Similarly, the other evidence mentioned by the trial judge is more properly classified as circumstantial than as direct. (See *People v. Rhodes* (1981), 85 Ill. 2d 241.) This conclusion is not inconsistent with *People v. Butler* (1970), 46 Ill. 2d 162, which the State cites for the view that proof of presence at the scene of a crime may be direct evidence of guilt. The defendant in *Butler* contended that all the evidence of guilt was direct and therefore no instruction on circumstantial evidence should have been given. In that case the defendant presented an alibi defense, and he testified that he was in a different city when the offenses occurred. Prosecution witnesses, however, testified that they saw the defendant jump from the roof of the building where the offense occurred. The court said, "The evidence connecting the defendant with the burglary was not, however, all direct. There was direct testimony that defendant was on the roof of the burglarized building and that he jumped to the ground and ran. The evidence of his breaking and entering the building and forcing open the safe was all circumstantial." (46 Ill. 2d 162, 166.) Thus, in rejecting the defendant's argument that all the evidence of guilt was direct, the court in *Butler* distinguished what direct evidence there was in the record—that the defendant was seen in the vicinity of the crime—from the circumstantial evidence of his guilt.

Contrary to the State's suggestion, we do not believe that defense counsel conceded in the trial court that the record contained some direct evidence of the defendant's guilt. The State points to defense counsel's statement, in arguing the post-trial motion, "This case, while the case law precluded giving the second paragraph of [the] circumstantial evidence instruction, this case was almost entirely based on circumstantial evidence." When coun-

sel made that statement, he was urging the consideration of two points in the post-trial motion that were unrelated to the instruction issue, and we do not interpret the statement as an abandonment by counsel of his position that the "reasonable theory" charge should have been given here. Counsel's argument was conforming to, rather than acquiescing in, the court's ruling that there was direct evidence in the case. In another part of the motion, defense counsel raised as grounds for a new trial the court's failure to give various jury instructions, and the State does not argue that the motion failed to preserve this particular issue for review.

The State also argues that the "reasonable theory of innocence" charge should be dispensed with. Recently we considered the arguments for and against the continued use of that paragraph in *People v. Crow* (1985), 108 Ill. 2d 520, and decided there to retain that part of the instruction, at least for the present time. (108 Ill. 2d 520, 536.) We now conclude that the "reasonable theory of innocence" charge should not be used.

In *Holland v. United States* (1954), 348 U.S. 121, 99 L. Ed. 150, 75 S. Ct. 127, the United States Supreme Court found no error in the refusal to give an instruction such as the one at issue here. The court said:

> "The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions [citations], but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect [citations].
>
> Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evi-

dence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." 348 U.S. 121, 139-40, 99 L. Ed. 150, 166-67, 75 S. Ct. 127, 137-38.

The "reasonable theory of innocence" charge is an attempt to express the reasonable-doubt standard in the vocabulary of circumstantial evidence. It is, in substance, an attempt to define reasonable doubt. We note that the jury in this case received the required instruction in the form of IPI Criminal 2d, No. 2.03, on the presumption of innocence and the burden of persuasion; that instruction is given in every case, regardless of the type of evidence involved. The use of an additional instruction setting out the "reasonable theory of innocence" charge may, however, confuse the jury. The language in the "reasonable theory" instruction suggests that a unique standard governs cases in which the evidence of guilt is entirely circumstantial, that the burden of proof in those cases is different in some fundamental respect.

We are not persuaded that in the absence of a definition of reasonable doubt the "reasonable theory of innocence" charge must be retained as a sort of proxy for a definition of that term. The question whether the instruction should be retained is, we believe, distinct from the question whether reasonable doubt must be defined. We do not consider here whether an instruction defining reasonable doubt is necessary; if one were required, we see no reason why the same definitional instruction would not be used in all cases, no matter whether the evidence of guilt was wholly direct, wholly circumstantial, or a mixture of the two. Thus, no purpose is served by preserving here, for this category of cases, an in-

struction that is at once obscure and misleading. We conclude, then, that the second paragraph of IPI Criminal No. 3.02 should no longer be used.

The defendant presents three other questions here in support of the appellate court's decision granting him a new trial. The defendant raised the matters in his initial brief, and the State responded to them in its reply brief; the defendant then submitted a second brief, labeled a cross-reply, that contained rebuttal argument on the three additional questions, and this was filed after the case was argued orally. The State has moved to strike the cross-reply brief, contending that it is not authorized by this court's rules.

These additional matters were raised as well in the appellate court, and that court, having found that a new trial was required because of the errors in the jury instructions, considered only the one additional question that it believed was likely to recur on the defendant's retrial. The appellate court found no error in the testimony of a forensic scientist that the glass found in the defendant's shoes more likely than not had come from the window at the service station. The second and third questions, which the appellate court did not discuss, concern testimony and argument regarding the arresting officer's prior acquaintance with the defendant, and the jury's request during its deliberations to examine the shirt that had been found near the service station.

Because the defendant is to be tried again, we shall briefly consider these questions, for they may recur on retrial. First, we agree with the defendant that it was improper here for the expert witness to give an opinion regarding the likelihood that the pieces of glass had a common origin. At trial, John Marcouiller, a forensic scientist, explained that the glass pieces from the defendant's shoes and a standard taken from a broken window at the service station had the same refractive index.

Asked by the prosecutor what conclusion he had reached regarding the glass, Marcouiller said that he had concluded that there was "a good probability that the glass that I found in the shoe came from the same source as the glass standard." On cross-examination defense counsel asked the witness whether "good probability" meant that it was more probable than not, and the witness agreed with that definition. He said that he based his conclusion on his visual and microscopic examinations of the glass and on the results of the refractive test he had performed. On redirect examination the witness said that it was a common type of glass. He also explained that in five out of some 60 tests he had previously performed he found glass with the same refractive index as that found here.

It should be noted that the defendant is not attacking the competence of the testimony that the refractive indexes of the two pieces were the same, but rather the statement that it was more probable than not that the pieces had a common origin—that the pieces in the defendant's shoes came from the broken window at the service station. We agree with the defendant that the opinion was improper. It is a familiar matter to have an expert witness testify, as the expert did here, that the results of scientific tests show that an item of physical evidence is consistent with a known standard. That should be distinguished, however, from Marcouiller's opinion. regarding the probability that glass in the defendant's shoes and the standard had a common origin. We believe that here the expert's testimony disclosed only that the pieces were consistent and therefore could have come from the same source. There was no foundation presented for testimony regarding the frequency of the occurrence of this type of glass, much less a statement concerning the likelihood that the pieces had a common source. The State argues, with some support

in the record, that the defendant's objection to the testimony at trial was somewhat different from the objection that he is making now. Because we have already determined here to affirm the judgment of the appellate court granting the defendant a new trial, we have found it appropriate to consider this question on its merits.

Next, the defendant argues that improper suggestions of a prior criminal record came out in testimony and argument at trial. The defendant complains of the testimony of the arresting officer, Ulrich, that he called to the defendant by name when he saw the defendant running from the service station. This was revealed in cross-examination, when Ulrich said, ''I told him to freeze. He kept on going. I called him by name and told him I would shoot.'' In closing argument the prosecutor referred to this twice. Reviewing the evidence, she said, ''The officer drew his gun, called the defendant by name, and ordered him to freeze or he would shoot.'' Later, in the rebuttal part of her argument, she contended that the defendant's flight from the scene was evidence of his guilt and said, ''It's not speculation that he ran after his name was called.'' The record does not explain how the officer happened to know the defendant. Although the prosecutor did not argue that the officer's prior acquaintance with the defendant was evidence of a criminal history, that implication may be conveyed by testimony of this nature, and for that reason it is better avoided, unless somehow relevant (see *People v. Stover* (1982), 89 Ill. 2d 189). It did not appear to have any relevance here.

The final matter raised by the defendant concerns the shirt that was found at the scene and admitted into evidence at trial. In closing argument the prosecutor said, ''The shirt had an odor about it similar to the odor of the defendant on the night in question. That shirt still contains an odor, and if you are allowed to see it in the

jury room, you will be able able to detect that." The trial judge initially decided not to send the shirt to the jury room, but immediately after it began its deliberations the jury sent out a note saying, "The jury would like to examine the shirt pieces submitted as evidence." Over the defendant's objection the shirt was then sent into the jury room.

It seems apparent that the jury's request for the shirt was prompted by the prosecutor's remark inviting them to examine it for its odor. The arresting officer testified at trial that on the night of the occurrence the shirt and the defendant had a similar odor; although defense counsel did not concede at trial that the shirt was the defendant's, whether the shirt had an odor at the time of the defendant's arrest was not a point of contention. Moreover, the defendant correctly observes that although in establishing the chain of custody of the shirt there was testimony that it was in the same condition at trial as it was on the night of the occurrence, no one testified that the odor of the shirt remained the same during that period. Thus, because there was no dispute that the shirt had an odor when it was found, no testimony that the original odor was still present at the time of trial, and no standard against which it could be compared, sending the shirt to the jury room might have been misleading, in light of the prosecutor's remarks.

We have already determined that the defendant must be granted a new trial, and we have considered the three additional matters here for the guidance of the parties on retrial. Because our consideration of the questions was motivated by that limited purpose, we do not believe that it is necessary here to consider the State's motion to strike the defendant's cross-reply brief.

For the reasons indicated, we affirm the judgment of the appellate court granting the defendant a new trial.

*Judgment affirmed.*