THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACKIE R. McLEAN, Defendant-Appellant.

Fifth District   No. 5—85—0720

Opinion filed May 29, 1987.

[1]Justice Harrison replaces Justice Jones, who retired after the case was taken under advisement.

HARRISON, J., dissenting.

Randy E. Blue and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, and James P. Gallagher, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

On August 20, 1985, a St. Clair County jury found defendant Jackie R. McLean guilty on two counts of residential burglary. Subsequently, the court sentenced defendant to 15 years' imprisonment on each count, to be served concurrently. From this conviction, defendant appeals, raising the issues of (1) whether he was proved guilty beyond a reasonable doubt of the two burglaries and (2) whether a remandment for resentencing is required because the court allegedly based its decision on the fact that "the crimes were perpetrated for profit or unlawful gain." We affirm.

At trial the following facts were adduced. On April 15, 1985, the home of Margaret and Raphael Neff was burglarized between the hours of 8 a.m. and 4 p.m. Items taken in the burglary were a microwave oven, various cameras, a movie projector, a slide projector, a portable AM/FM stereo cassette player, a pair of Raphael's cowboy boots, two of Margaret's jewelry boxes and their contents, and Raphael's jewelry box. On the following day between the hours of 6:31 a.m. and 4:30 p.m., the home of Charles Dunn III was burglarized. The burglar took his wallet, color television, wicker basket, and some clothes which were in the basket. The police received the report on the Dunn burglary at 4:53 p.m.

Around 4 p.m. on the day of the Dunn burglary, Barbara Ann Wagner, owner of Mid-City Pawn, stated that the defendant, with

whom she had done business in the past, entered her shop. The defendant's companion, John S. Harris, Sr., stated that he was interested in selling two gold rings. At that point, defendant produced a blue "Crown Royal" bag and asked Barbara if she was buying silver and what she was paying for it. Defendant then began to remove various silver items from the blue bag. Barbara did not remember or identify any of the objects he took out of the bag.

Police officer Dale Wagner, Barbara's husband, came out of the side room of the building. He recognized the defendant, with whom he was mutually acquainted. At that time, he left the shop to summon the police. When Dale returned, he pulled a gun and placed defendant and his companion under arrest.

Officers Proksha, Moore, Isenhart, and Klingle answered Dale's call. When Proksha and Klingle arrived, they noticed a blue Ford Torino automobile parked in a lot behind the building and across the street from the pawnshop. The car was unoccupied, with the reported stolen license plates, Illinois number YF2402. The car was subsequently towed to the police garage, photographed, and searched.

Defendant's companion (John Harris) provided the officers with the key to the vehicle's trunk. In the trunk, the police found Raphael's cowboy boots and in the seating compartment found a television set, wicker basket, wallet, and some clothing. Charles Dunn identified the items found inside the car as his.

Detective Isenhart seized the blue bag and silver jewelry that were lying on the counter in the pawnshop. Later, that evening, Margaret Neff identified some of the jewelry in the bag as items taken in the April 15 burglary.

When the police searched defendant, they found a traffic ticket dated April 10 issued to the defendant describing a Ford Torino. However, defendant denied having driven the Ford Torino outside the pawnshop and denied having been in the car. Furthermore, he not only did not know how the car arrived there but also did not know how he arrived at the pawnshop.

Richard Pruitt stated that he had known the defendant for six or seven years. Pruitt stated on or about April 2 or 3, 1985, he had sold his 1975 Ford Torino to the defendant. Prior to the sale, Pruitt stated he had loaned the car to the defendant and defendant had borrowed the car for three to seven days. When Pruitt sold the car to defendant, he delivered but did not sign the title to the car. When Pruitt sold the car to defendant, Pruitt instructed defendant to return the plates which were on the car. However, when defend-

ant did not return them, Pruitt reported to the police that the plates (AWX 822) had either been lost or stolen. Pruitt also told the police that the car buyer's name was John Rogers.

On April 10, Secretary of State police investigators Margaret Hitt and Robert Claus stopped a 1975 blue Ford because the vehicle did not have any license plates. Hitt identified defendant as the one driving the car but he identified himself as Bobby Joe Jackson. The "license applied for" sticker attached to the car's windshield had been issued to and titled to the wife of defendant's passenger, John Harris, Sr.

■■ ■ Defendant's first issue on appeal is whether he was proved guilty beyond a reasonable doubt of the two residential burglaries. Defendant argues that the evidence on which the jury returned its verdicts of guilty was entirely circumstantial, consisting exclusively of his recent, exclusive, and unexplained possession of the stolen property from the two residences.

It has been well established that the exclusive and unexplained possession of recently stolen property will not in and of itself support a conviction for burglary if it is the only evidence offered by the prosecution. (See *County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213.) Furthermore, where the evidence is entirely circumstantial, as in this case, the established standard on appeal is that the facts proved must be consistent with defendant's guilt and inconsistent with any reasonable hypothesis of innocence. (*People v. Crow* (1985), 108 Ill. 2d 520, 533, 485 N.E.2d 381, 387, citing *People v. Evans* (1981), 87 Ill. 2d 277, 429 N.E.2d 520; see also *People v. Bryant* (1986), 113 Ill. 2d 497, 510-12, 499 N.E.2d 413, 419-20.) However, the State may use circumstantial evidence and the inferences drawn from such evidence to sustain a burglary conviction. *People v. Dace* (1983), 114 Ill. App. 3d 908, 912, 449 N.E.2d 1031, 1033, *aff'd* (1984), 104 Ill. 2d 96, 470 N.E.2d 993.

■■ ■ In *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160, the court dealt with the jury instruction allowing the finder of fact to infer guilt from a defendant's exclusive possession of recently stolen property when there was no reasonable explanation for the possession. The *Housby* court reconciled the earlier decisions regarding this issue with the mandates of the due process clause. The court determined that the inference that the recent and unexplained possession of items stolen in a burglary, without reasonable explanation, gives rise to an inference that the possession was obtained by burglary does not infringe upon defendant's right of due process if,

in addition to proving the defendant's exclusive and unexplained possession of recently stolen property, certain additional factors are introduced. These factors are: (1) there was a rational connection between the possession and the participation in the burglary; (2) the guilt of burglary more likely than not flows from the possession of the burglary proceeds; and (3) there is corroborating evidence of guilt. (*People v. Housby* (1981), 84 Ill. 2d 415, 424, 420 N.E.2d 151, 155.) It is not necessary that the jury be satisfied beyond a reasonable doubt regarding each link in the chain of circumstances but rather it is sufficient if all the evidence taken together satisfies the jury beyond a reasonable doubt of the defendant's guilt. *People v. Jones* (1985), 105 Ill. 2d 342, 350, 475 N.E.2d 832, 835.

◼️ In the recent case of *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, the court has determined that the jury instruction regarding "reasonable theory of innocence" should not be used because "where the jury is properly instructed on the standards of reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." (113 Ill. 2d. 497, 510, 499 N.E.2d. 413, 419.) The *Bryant* court held that since the jury instruction only expresses the reasonable doubt theory standard in the vocabulary of circumstantial evidence, it is an attempt to define reasonable doubt. The court found that this instruction suggests a unique standard where evidence of guilt is entirely circumstantial. In addition the *Bryant* court held that whether the instruction should be retained is distinct from the question of whether reasonable doubt must be defined. If such an instruction is needed, it should be used in all cases. The *Bryant* court held that it did not find a purpose for preserving the instruction, which is obscure and misleading. However, the *Bryant* court dealt with a jury instruction. On review, the "reasonable theory of innocence" is not confusing to this court, as it has been determined in *Bryant* for a jury. The *Bryant* court neither attacked nor overruled the use of the standard on review. Thus, this court may use the "reasonable theory of innocence" in its review of this case.

In determining whether there is a reasonable hypothesis of innocence, this court must analyze the facts in relation to the factors established in *Housby*. Defendant argues that he was an innocent victim of circumstances because he did not make an attempt to conceal his possession of the stolen jewelry, attempt to leave the premises, or attempt to hide the property. However, defendant did not introduce any evidence revealing the nature of the innocent circumstances. In addition, when the police arrested the defendant, they

observed a Ford Torino which had been reported stolen parked in a lot behind a building across the street from the pawnshop. In the car, the police recovered various items of stolen property. Defendant denied ownership of the vehicle and denied any knowledge of the vehicle. Furthermore, defendant stated that he did not know how he arrived at the pawnshop.

Also, in defendant's possession at the time of arrest was a traffic ticket issued to him when he was driving the same Ford Torino six days prior to his arrest. Although the ticket was issued to a Bobby Joe Jackson, Margaret Hitt, the officer issuing the traffic citation, described and identified defendant as the driver of the Ford Torino that she stopped. Further, the former owner of the car, Richard Pruitt, stated that on April 3, 1985, he sold the vehicle to defendant for $300. He had known defendant for several years. Further, the Ford Torino was parked on a side street near the pawnshop and contained several of the items taken in the burglaries.

Also, at the time of defendant's arrest, he had on his person several items of jewelry that had been identified as stolen from the Neff residence during the preceding day. In the defendant's car, the police found Neff's stolen cowboy boots, Dunn's wallet, as well as his television set, wicker basket, and some clothing. Defendant's companion John Harris, Sr., provided the police with a key to the trunk of the vehicle.

Most significantly, defendant was in possession of the items stolen at the Dunn residence not only on the day of the burglary but also prior to the discovery and report of the Dunn burglary. Furthermore, both burglarized residences were not only in the same town but also in close proximity to the pawnshop. The Neff residence is on a street which is parallel to 17th Street and the Dunn residence is off Main Street on 35th Street.

From the foregoing facts, it is more probable than not that defendant was the burglar. This court finds that there is a rational connection between the possession of the stolen jewelry and participation in the burglaries, guilt of the burglary more likely than not flows from the possession of the burglary proceeds, and that there was corroborating evidence of guilt. Thus, this court finds that there is no reasonable hypothesis of innocence.

Once the State establishes a permissive inference of guilt and the jury accepts the shift from the proved fact to the presumed element, the burden of production shifts to the defendant to neutralize the State's case in the eyes of the jurors by providing a reasonable explanation for his possession of the stolen items. (*People v.*

*Housby* (1981), 84 Ill. 2d 415, 431, 420 N.E.2d 151, 159). The burden to produce a reasonable explanation is no more onerous than the "normal consequence of any evidence introduced by the State tending to show guilt." (*People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) Defendant elected not to take the stand and instead presented an alibi witness, John Harris, Jr. Harris, Jr., stated that on April 15, 1985, defendant was present at a barbecue held at his father's residence, John Harris, Sr., who was arrested with defendant. According to Harris, Jr., defendant arrived at the barbecue at approximately 9 a.m. and stayed until 4 p.m. He stated that he and defendant watched television together that morning. However, he was unable to recall the names of the programs watched, what vehicle defendant drove that day, or if a 1975 blue Ford Torino was parked at the barbecue. He also admitted that he never attempted to tell the police or any other authorities about the all-day barbecue. His father, John, Sr., did not mention the all-day barbecue at trial. Thus, this court finds that the jury reasonably believed defendant's alibi defense to be false and that defendant was proved guilty beyond a reasonable doubt of the two residential burglaries.

■■ ■ Defendant's next issue on appeal is whether the court placed improper weight at sentencing on an aggravating factor. Defendant argues that the court's consideration that "the crimes were perpetrated for profit or unlawful gain" was improper when it sentenced the defendant to the maximum sentence for each residential burglary. (Ill. Rev. Stat. 1985, ch. 38, pars. 19—3(b), 1005—8—1(a)(4).) Defendant argues that "inasmuch as most burglaries *** involve proceeds, it is reasonable to conclude that the legislature already considered that factor in establishing the penalties."

Imposition of a sentence following conviction of a crime is within the sound discretion of the trial judge and should not be disturbed absent an abuse. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541, 547.) Further, the imposition of a sentence of any length within the range provided for the class of crime of which defendant was convicted is a decision committed by the statute to the discretion of the sentencing court. (*People v. Barney* (1982), 111 Ill. App. 3d 669, 679, 444 N.E.2d 518, 525.) Moreover, in determining a sentence, the trial court must consider a variety of factors, such as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

■■ In this case, although the trial court improperly considered an aggravating factor, remandment for resentencing is not required

because the weight given was so insignificant that it did not contribute to a greater sentence. (*People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340.) In this case, the court not only considered the improper factor but also that defendant had an extensive history of criminality. At the time of the offense, defendant was on parole for a prior burglary in Madison County, Illinois. Defendant also has convictions of burglary on five other occasions and was convicted of a felony narcotics violation. The trial court also noted the necessity of imposing a term of imprisonment to deter others from committing the same offense. Thus, this court finds that the improper factor was not significant in imposing the maximum sentence and as such finds that remandment for resentencing is not required.

For the foregoing reasons, the verdict of the St. Clair County jury is affirmed.

Affirmed.

KARNS, P.J., concurs.

JUSTICE HARRISON, dissenting:

As the majority correctly observes, exclusive and unexplained possession of recently stolen property will not in and of itself support a conviction for burglary. There must be other facts and circumstances which corroborate the defendant's guilt. (*People v. Housby* (1981), 84 Ill. 2d 415, 423, 420 N.E.2d 151, 155.) In this case, however, no such corroboration is present. While the record may be sufficient to show that defendant is a receiver of stolen property or that he has committed theft, it does not establish that he is guilty beyond a reasonable doubt of residential burglary. I would therefore reverse.