THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VER-
NELL JONES, Defendant-Appellant.

First District (2nd Division)   No. 1—88—1690

Opinion filed December 14, 1993.

Rita A. Fry, Public Defender, of Chicago (Anne C. Myles-Smith and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret Regan, and Anne Scrivner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Defendant Vernell Jones was charged with armed robbery and aggravated battery. After a jury trial, defendant was convicted of armed robbery and sentenced to eight years in the Illinois Department of Corrections.

On appeal, defendant argues that (1) the conduct of the prosecutors during his testimony denied him a fair trial; (2) the trial court erred when it denied his request for a jury instruction on theft of services; and (3) the trial court answered jury questions improperly. We affirm.

On February 27, 1987, at approximately 3 p.m., Watson Slater, a cabdriver, picked up defendant at 95th Street and the Dan Ryan in Chicago, Illinois. Defendant asked Slater to take him downtown to a health club. After stopping at the health club, defendant returned to the cab and told Slater to take him to his job on south Wabash Avenue. Slater drove around the area until they arrived at the 1900 block south on Wabash Avenue.

At trial, Slater testified that when they reached 19th and Wabash he told defendant that his cab fare was $18.60. Defendant asked him if he had change for $100 bill and Slater answered "no." At that time, defendant reached over the seat with a knife, put it to Slater's side and told Slater to give him the money he had. Slater gave defendant $10 in coins and $110 in bills. Defendant told Slater to pull around into an alley. Slater turned around and grabbed defendant's arm. The two men began fighting. Defendant bit off a piece of Slater's ear and stabbed Slater in the arm. Slater ended up on the backseat with defendant. Eventually they fell out of the cab onto the ground and defendant broke away and ran. On cross-examination, Slater testified that defendant told him he did not know the address of his work place and defendant never showed him yellow cards with the address on them.

Officer Furmanek testified that he and his partner were on routine patrol when they observed Slater and defendant fighting in the cab. When defendant ran away from the scene the officers pursued and captured him. They recovered a knife, briefcase and $110 from defendant. Slater told the officers that the money belonged to him.

Assistant State's Attorney David Cuomo testified that he spoke with defendant on February 27, 1987, at the police station. Defendant told Cuomo that he carried a Rambo knife in his briefcase during the cab ride. When defendant and Slater arrived at about 20th and Wabash, he took out the knife, leaned over the seat, put the knife by Slater's stomach and told him to give him his money. Slater gave defendant a roll of bills.

Cuomo reduced defendant's statement to writing. Defendant signed each page of the written statement. Defendant wrote on the statement in his own hand: "I'm sorry for taking the man's money and I'm also sorry for hurting the man in any way. I didn't mean it."

Defendant testified that on February 27, 1987, he was employed by International Business Systems at 1255 South Wabash. When he got in the cab defendant gave Slater a yellow card with his work address on it. Defendant did not realize that Slater had passed his job until they reached 16th Street. When they reached 19th Street Slater told defendant the amount of the fare. Defendant told Slater that it was too high and that he would pay $14.25 because that is what the meter read when Slater initially passed defendant's job. Slater told defendant that he had to pay the whole fare. Defendant proceeded to get out of the cab, but Slater grabbed him by his neck and pulled defendant back into the cab. They struggled. When Slater reached for something under the seat, defendant pulled his knife out. They continued to fight.

Defendant testified that Cuomo told him that Slater may not press charges and defendant might go home, if defendant wrote a statement saying that he was sorry. At this point, the assistant public defender commented to the trial court that the assistant State's Attorneys were laughing. The trial court admonished the assistant State's Attorneys to remember, "we have a jury before us."

The State called Detective James Cassidy, one of the investigating police officers, as a rebuttal witness. Cassidy testified that defendant never told the detectives that there was an argument over the cab fare or that he acted in self-defense.

Prior to closing arguments, the trial court denied defendant's motion for a mistrial. After closing arguments the trial court instructed the jury as to the applicable law. During deliberations the jury sent two notes with questions to the trial court. The trial court answered the first question, but declined to answer the second question. Instead, the trial court brought the jurors into open court and asked them if they had reached a verdict on either count. The jury foreman responded that they had reached a verdict. The verdict form indicated defendant was found guilty of armed robbery. The trial court polled

the jurors and entered judgment on the verdict. The trial court declared the jury hung on the aggravated battery count.

Defendant's initial contention is that the prosecutors' conduct, laughing at defendant's testimony, denied him a fair trial. The assistant State's Attorneys laughed when defendant testified that Cuomo said defendant might go home if defendant wrote a statement saying that he was sorry for what he had done. The trial court reminded the assistant State's Attorneys to be mindful that a "jury was before us." In its instructions, the trial court directed the jury to consider only the evidence that was presented in open court by witnesses and the exhibits and stipulations received.

■ The assistant State's Attorneys' conduct was improper in that it demeans our legal system, but there is nothing in the record to suggest that the jury's verdict was in any way affected by this misconduct. Such misconduct is clearly out of the realm of evidence to be considered as the trial court instructed the jury. The trial court is in a superior position to observe the impact of misconduct on the jury, and it is within the sound discretion of the trial court to determine whether the prosecutor's misconduct interfered with defendant's right to a fair trial. *Fultz v. Peart* (1986), 144 Ill. App. 3d 364, 380, 494 N.E.2d 212.

Based upon the record before us, we do not believe that defendant has established that he was denied a fair trial by the prosecutor's misconduct. We find no abuse of discretion in the trial court's management of this matter.

Defendant next contends that the trial court erred when it refused to give the jury a theft of services instruction, which would have given the jury a viable alternative to the charges brought by the State. Defendant cites to *People v. Fryman* (1954), 4 Ill. 2d 224, 123 N.E.2d 573, where the court stated:

> "A defendant is entitled to have the jury instructed not only as to the law applicable to the state of facts testified to but applicable to any state of facts which the jury might legitimately find from the evidence to have been proved, and a defendant is entitled to the benefit of any defense shown by the entire evidence." *Fryman,* 4 Ill. 2d at 231.

In the instant case, defendant was charged with committing the offense of armed robbery in that "he, by use of force and by threatening the imminent use of force while armed with a dangerous weapon, took United States Currency from person and presence of Watson Slater, in violation of Chapter 38, Section 18—2—A of the Illinois Revised Statutes 1985 as amended." Theft of services is defined in section 16—3(a) (Ill. Rev. Stat. 1987, ch. 38, par. 16—3(a)),

which states in relevant part: "A person commits theft when he obtains the temporary use of \*\*\* services of another which are available only for hire, by means of threat or deception or knowing that such use is without the consent of the person providing the \*\*\* services." Ill. Rev. Stat. 1987, ch. 38, par. 16—3(a).

Under certain circumstances an instruction on a lesser offense than the one charged is proper. (*People v. Bryant* (1986), 113 Ill. 2d 497, 502, 499 N.E.2d 413.) In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it, is entitled to an instruction which would permit a finding of guilt of the lesser offense. *People v. Cramer* (1981), 85 Ill. 2d 92, 97, 421 N.E.2d 189, quoting *Sansone v. United States* (1965), 380 U.S. 343, 349, 13 L. Ed. 2d 882, 887-88, 85 S. Ct. 1004, 1009.

In the case at bar, defendant testified that a dispute arose over the amount of the cab fare. Defendant told Slater that he would pay part of the fare, but not the whole amount. Defendant never testified that he was trying to avoid paying his cab fare. There was no evidence that defendant obtained the temporary use of Slater's services by threat or deception or knowing that such use was without Slater's consent. See Ill. Rev. Stat. 1987, ch. 38, par. 16—3(a).

A comparison of the offense of armed robbery, as charged in the indictment, with the definition of theft of services, reveals that theft of services is not a lesser-included offense of armed robbery. The essential elements of theft of services are not needed to establish the offense of armed robbery as charged in the case at bar. (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a).) The trial court did not err when it refused to tender a jury instruction on theft of services.

Defendant's final contention is that he was denied a fair trial because the trial court improperly responded to the questions tendered by the jury during its deliberations. First, the jury asked, "Did Officer Furmanek ask the cab driver at the scene how much money was taken from him? And what was the cabby's response?" Over defendant's objection, the trial court told the jury that the cab driver stated that $110 was taken from him. The second question the jury asked, "Does Vernell Jones give up the right to self-defense having been the perpetrator of the robbery?" The trial court declined to answer this question, but instead brought the jury into the courtroom and asked if the jury had reached a verdict on either count. As previously indicated, the jury had reached a verdict on the armed robbery count.

It is well settled that the decision on whether or not to answer a jury's question is within the sound discretion of the trial court. *People v. Reid* (1990), 136 Ill. 2d 27, 38-39, 554 N.E.2d 174.

■ Furmanek testified that Slater told him, at the scene, that $110 was taken. The trial court sustained defendant's objection to this testimony and immediately instructed the jury to disregard it. The jury's note first asked simply if Furmanek testified that he asked Slater, at the scene, "how much money was taken" and what was Slater's response. Ultimately, the trial court concluded that it was improper to inform the jury of Furmanek's testimony in that it was stricken as the result of defendant's objection. However, the trial court did inform the jury of Slater's testimony relative to the amount of money taken from him. The trial court informed the jury that no transcript was available and that the trial court will answer the questions as follows: The cabby, Slater, "did in fact say at the scene to the police officer that $110 was taken from him." By this response, the trial court, without a transcript, informed the jury of the trial court's recall of the testimony. This procedure may diminish the jurors' resolve to use their collective memories to recall the testimony and determine the facts. The jury's first note inquired into Fermanek's testimony and the trial court's response attempted to restate Slater's testimony. The trial court improperly infringed on the province of the trier of fact. The jurors should have been told to rely on their collective memories.

This response by the trial court, however, did not deny defendant a fair trial and mandate a reversal. There is no showing of prejudice. The evidence shows that Slater carried $110 in United States currency in one pocket and $10 in coins in another pocket. Slater stated that he handed the money from his pocket to defendant. He later told the officer that $110 was taken. The officers counted $110 in United States currency from the attache case belonging to defendant. In light of the evidence, the jury's note demonstrated a concern as to whether the $10 in coins had been taken. Defendant testified that the $110 in bills in the attache case belonged to him. Whether the incident involved the $10 in coins is not controlling of any issue presented in the case at bar. The jury's verdict turns on the credibility of complainant's testimony over defendant's testimony. The trial court's response did not prejudice defendant so as to deny him a fair trial.

■ The jury sent a second note to the trial court: "Does Vernell Jones give up the right to self-defense having been the perpetrator of the robbery?" The trial court, after a discussion with the attorney, declined to answer the jury's second note. Instead, the jury was brought into open court and asked if it had reached a verdict on either count. As previously indicated, the jury had reached a verdict and the trial court proceeded to accept the verdict and enter

judgment. Defendant contends that the second note raised an explicit question on a point of law which required the trial court to attempt to clarify. By raising this argument, defendant ignores the fact that the note spoke to the issue of self-defense. There is no balancing of the question of self-defense as a defense to the robbery charge under the facts and circumstances involved in this case. The plain meaning of the second note is that the jury was concerned with the issue of self-defense as a defense to the aggravated battery charge. Defendant testified that as he attempted to get out of the cab, Slater attacked him. If the jury had found that defendant was attacked after he abandoned the armed robbery, it could have decided that defendant had, at that point, a right to self-defense. The aggravated battery is not at issue in this appeal in that defendant was not convicted of that charge. We do not address the issues regarding the jury's second note, in that said note is not relevant to the conviction on the charge of armed robbery, which is the subject matter of the appeal in the case at bar.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.