THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VERNON WATSON, Defendant-Appellant.

First District (1st Division)   No. 1—92—2052

Opinion filed May 16, 1994.

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Lisa Travis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Vernon Watson was convicted of attempted aggravated criminal sexual assault and robbery. He was sentenced to an extended term of 30 years for attempted aggravated criminal sexual assault and seven years for robbery, the terms to run consecutively. Defendant appeals his convictions and sentences. We affirm his conviction and sentence for robbery, reverse his conviction

and vacate his sentence for attempted aggravated criminal sexual assault and remand this cause for a new trial on the sex offense charge.

Prior to jury selection, defendant requested that the circuit court ask each venireperson what his or her feelings are with regard to a black defendant being charged with the attempted aggravated criminal sexual assault of a white woman. In denying the request, the circuit court reasoned that the proposed question would unnecessarily interject race into the trial. Thereafter, the parties proceeded to pick a jury and the trial began.

On the second day of trial, the circuit court discovered that certain jurors had read newspaper articles about the defendant. One of those articles contained information which was inadmissible at trial. That article referred to defendant as a "paroled rapist" and further mentioned his previous arrest for sexual assault. The circuit court *voir dired* each juror separately concerning newspaper articles featuring defendant. Throughout the questioning, defendant moved to strike certain jurors from their service. After questioning the jurors, the circuit court excused juror Levin because he had read the article containing defendant's background information "in full." The court, however, refused to excuse any of the other jurors. The remaining motions to strike various jurors were denied, as was defendant's motion for a mistrial.

The complainant was the first witness to testify at trial. She stated that on September 13, 1989, she was living in the Beverly area of Chicago and had left her home at 6:05 a.m. to catch the train at the 95th Street station. En route, she noticed a man walking in the opposite direction on the other side of the street. The man crossed over to her side of the street and approached. The complainant testified that she got a good look at her assailant's uncovered face before he grabbed her coat. Defendant then threatened to kill her if she either said anything or ran. He put his hand on her shoulder and forced her to walk down an alley with him. Once in the alley, defendant demanded her jewelry. She gave him her earrings, engagement and wedding rings, watch and a pin. Defendant then demanded money. He took all her money, about $4, credit cards and a Casio personal computer. He also searched her purse and briefcase. Next, defendant commanded her to take off her clothes. When the complainant asked why, defendant responded that it was for his "protection." Slowly, complainant began to remove her clothing. Defendant demanded that she "hurry up." When she attempted to remove her bra, defendant unhooked it. He cupped her left breast in his hand. Then, as she started to remove her skirt, defendant put his

hands on her waistband. When defendant did that, complainant fled. She ran to a nearby house, pounded on the door and was admitted by Mrs. Halliday. Halliday called complainant's husband. After arriving at Halliday's house, the husband called the police. The police came 15 minutes later and the complainant related her story to them.

Several hours later, that same morning, the police came to complainant's house and showed her five photos. She chose defendant's photo as the one which depicted her assailant, but commented that the man in the photo looked too young. That photo of defendant had been taken 14 years earlier. Later, that same day, the police returned to her house with another group of five photos. Again, complainant chose defendant's photo as the one which looked like her assailant. Two days later, she went to the police station and picked defendant out of a lineup. After several police detectives corroborated complainant's identification of defendant, the State rested its case.

Since defendant did not present any witnesses to testify on his behalf, the parties proceeded to the instruction conference. Defendant tendered an instruction on the lesser offense of criminal sexual abuse. The circuit court refused to give the jury that instruction. After receiving the instructions and deliberating, the jury found defendant guilty of attempted aggravated criminal sexual assault and robbery. The circuit court sentenced him to a 30-year extended term for attempted aggravated criminal sexual assault and seven years for robbery, the terms to run consecutively. Defendant appeals.

■ Defendant's first argument on appeal is that the circuit court erred in refusing to instruct the jury on the offense of criminal sexual abuse. Defendant correctly asserts that criminal sexual abuse is a lesser-included offense of attempted aggravated criminal sexual assault. (See *People v. Smith* (1987), 152 Ill. App. 3d 589, 504 N.E.2d 850.) A person commits criminal sexual abuse when he "commits an act of sexual conduct by the use of force or threat of force." (Ill. Rev. Stat. 1991, ch. 38, par. 12—15(a)(1) (now 720 ILCS 5/12—15(a)(1) (West 1992)).) "Sexual conduct" is defined as "any intentional or knowing touching or fondling by *** the accused, either directly or through clothing, of the sex organs, anus or breast of the victim *** for the purpose of sexual gratification or arousal of *** the accused." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e) (now 720 ILCS 5/12—12(e) (West 1992)).

A defendant who is charged with a single offense can be convicted of another uncharged offense if the latter is a lesser-included offense of the charged crime. (*People v. Schmidt* (1988), 126 Ill. 2d 179, 533 N.E.2d 898.) A crime is a lesser-included offense if the charging

instrument, together with the evidence introduced at trial, sets out the main outline of the lesser offense. (*People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413.) The indictment charging defendant with forcing complainant to remove her blouse and bra and then touching her breast adequately sets out the conduct requirement of criminal sexual abuse. Furthermore, it is not necessary for the charging document to expressly allege all the elements of the lesser offense; it is sufficient if it implicitly sets out the required mental state of knowledge. (*People v. Jones* (1992), 149 Ill. 2d 288, 595 N.E.2d 1071.) In the instant case, the indictment implies the mental state required for criminal sexual abuse, intent or knowledge. (See *People v. Terrell* (1989), 132 Ill. 2d 178, 547 N.E.2d 145.) In the case at bar, the indictment alleges that defendant touched complainant's breast through the use of threat or force, thereby adequately setting forth that the touching was done intentionally or knowingly.

Although criminal sexual abuse has the additional element that the touching be done for sexual gratification or arousal, the Illinois Supreme Court has opined that such an element is inherent in the definition of "sexual penetration," which was part of defendant's indictment. The supreme court reasoned that the legislature required the element of sexual gratification in order to negate the possibility that the touching which is part of the offense was not done accidentally or unintentionally. (*Terrell*, 132 Ill. 2d at 210, 547 N.E.2d at 159.) Since "sexual penetration" was part of defendant's indictment, the criminal sexual abuse element of "sexual gratification" was adequately alleged.

We agree with defendant that the charging instrument in this case sufficiently outlined the offense of criminal sexual abuse and that there was ample evidence of that crime to warrant giving the instruction for this lesser-included offense of attempted aggravated criminal sexual assault. Because the evidence at defendant's trial would have permitted the jury to rationally find him guilty of the lesser offense and acquit him of the greater (see *People v. Cramer* (1981), 85 Ill. 2d 92, 421 N.E.2d 189), we reverse defendant's conviction of attempted aggravated sexual assault, vacate his sentence based thereon and remand this cause for a new trial on the sex offense.

■ Defendant's second issue on appeal is that the indictment against him failed to allege a substantial step toward the commission of attempted aggravated criminal sexual assault and, therefore, subjects him to further prosecution based on the same conduct, which would be double jeopardy. Defendant has waived this issue for review because he failed to object to the language of the indictment at any

time during the trial. It is well-settled law that in order to preserve an issue for appeal, a defendant must make a timely objection at trial and include it in a written post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

■ Defendant's next argument is that he was denied a fair trial because the circuit court did not declare a mistrial after learning that during the trial, a juror had read a newspaper article concerning the case. Defendant's trial began on Wednesday, March 25, 1993. On Friday, March 27, it came to the court's attention that juror Levin had read a news article regarding the case. Levin assured the court that he had not mentioned the article to any of the other jurors. The circuit court acknowledged that it had neglected to instruct the jurors to refrain from reading newspapers. Defendant moved to have Levin discharged from his duty as a juror and also for a mistrial. The circuit court reserved its ruling and individually *voir dired* the jurors.

Levin was the first juror to be *voir dired*. He explained to the court that he had read an article about defendant in the Thursday, March 26, Chicago Sun-Times. That article stated that defendant had been the first person in Cook County to be indicted on the basis of a DNA test and had been charged with the instant offense 20 days after being released from police custody. Levin assured the court that he could be fair and would not be influenced by the article. He further informed the court that two other jurors had read an article about the case in the Friday, March 27, newspaper. Following Levin's *voir dire*, the State and defendant agreed that he should be discharged from his duty as a juror, but the circuit court, nevertheless, reserved its ruling on Levin's dismissal until the other jurors had also been *voir dired*.

Next, juror Tobin informed the court that although she had not read any articles pertaining to the case, she had heard another juror comment about a newspaper article. She stated that anything she had heard would not influence her verdict. Juror Sirvanskas also stated that someone had mentioned an article which he had not seen. He further declared that he was not familiar with the article's contents.

Juror Becker informed the court that he had read the Friday article featuring defendant in the Sun-Times. Becker stated that nothing in the article would influence his verdict because the article "basically laid out the facts that [he] was already aware of." The court instructed Becker to "absolutely disregard" anything he had read in the papers and to decide the case only on the evidence and the law. Following the court's instruction to Becker, defendant moved to strike him and renewed his motion for a mistrial. The court took the motion under advisement and continued the *voir dire*.

Juror Adams was the next juror to admit that he had seen the Friday Sun-Times article. He said that he discontinued reading it after reading the words "Beverly lawyer." Adams also assured the court that he would not allow the article to influence his verdict. Defendant moved to strike Adams and renewed his motion for a mistrial, which the court took under advisement. Juror Porter and alternate juror Smith acknowledged hearing one of the jurors say that the case was in the paper, but did not learn of the contents of the article.

At the conclusion of the *voir dire*, the State, again, agreed that Levin should be discharged. The State, however, opined that the other jurors were not tainted by anything they had read or heard. The defense stood on its motions.

The circuit court agreed to dismiss only Levin, stating:

"Since we have an agreement. [*sic*] I will discharge Juror Levin with great reluctance. I don't think there is legal reason for me discharging him at this point in time.

\* \* \*

Here we have an isolated article published in this morning's paper, read by a juror who has credibly stated that notwithstanding his reading of that article he could yet render a fair and impartial verdict. We have an agreement by and between the parties that Mr. Levin will be discharged.

I will abide by that. I just wanted my feelings to be placed of record."

To warrant a reversal based on a tainted jury, it must reasonably appear that at least some of the jurors have been so influenced or prejudiced that they cannot be fair and impartial. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806.) Whether or not to grant a mistrial based on the fact that jurors read newspaper articles concerning the trial at hand is within the sound discretion of the circuit court. (*People v. Del Genio* (1973), 10 Ill. App. 3d 432, 294 N.E.2d 332.) Illinois courts have found that a circuit court did not abuse its discretion in denying a motion for mistrial where a juror had read a newspaper article concerning the defendant's prior conviction, where the juror was found to still be fair and impartial, where the prejudicial information in the article did not contain reference to any matters suppressed by the trial court and where there was no indication that the prosecutor had any connection with the newspaper article's appearance. *People v. Bassett* (1980), 84 Ill. App. 3d 133, 404 N.E.2d 1125.

After reviewing the record, the instant case fits the standards enunciated in *Bassett*. The article that the other jurors saw was

different from the one which Levin read. The Thursday Sun-Times article which Levin read contained information about defendant's background, while the Friday Sun-Times article Becker read contained only information of which he was already aware through trial evidence and testimony. Adams, the other juror who partially read the Friday article, only read until he realized it pertained to the instant case. Becker, Adams and the jurors who "heard" about Friday's article assured the court that they would consider only the testimony and evidence at trial when deliberating on defendant's verdict. There is no evidence that the circuit court abused its discretion in denying defendant's motions to strike the jurors who read or heard about the Friday Sun-Times article or in denying his motion for a mistrial.

■ Defendant's fourth argument on appeal is that he was denied a fair trial because the circuit court refused to *voir dire* the venirepersons regarding any prejudice or bias they may have against a black defendant charged with attempting to rape a white woman. In refusing to ask such a question, the circuit court reasoned that by asking a race-related question, the court, itself, would inject race into the trial proceedings when it otherwise would not be. It is the duty of the circuit court to manage the *voir dire*. (*People v. De Savieu* (1983), 120 Ill. App. 3d 420, 458 N.E.2d 504.) Thus, it is within the circuit court's discretion to allow supplemental questions by counsel in *voir dire* examination. *De Savieu*, 120 Ill. App. 3d 420, 458 N.E.2d 504.

The Illinois Supreme Court has found that the Constitution requires the circuit court to question venirepersons specifically regarding racial prejudice only if "special circumstances" exist that suggest a constitutionally significant likelihood that racial prejudice might infect a defendant's trial. (*People v. Peeples* (1993), 155 Ill. 2d 422, 616 N.E.2d 294.) However, the "sole fact that the defendant is black and the victim is white 'does not constitute a "special circumstance" of constitutional proportions.'" (*Peeples*, 155 Ill. 2d at 460, 616 N.E.2d at 311, quoting *Turner v. Murray* (1986), 476 U.S. 28, 33, 90 L. Ed. 2d 27, 35, 106 S. Ct. 1683, 1687.) The only racial factors in this case are that the victim is white and defendant is black.

After reviewing the record and applying the above principles to the case at bar, we find that the circuit court did not abuse its discretion by refusing to pose a specific racial prejudice question to the venire.

■ Defendant next argues that he was improperly convicted of more than one count of attempted aggravated criminal sexual assault arising from the same physical act. Since we have previously decided to reverse defendant's conviction for attempted aggravated criminal

sexual assault and remand this cause for a new trial on that offense, the above issue is moot. We, therefore, decline to rule on this issue.

■ Defendant's last argument is that he was improperly sentenced to two consecutive sentences. Although we are reversing defendant's attempted aggravated criminal sexual assault conviction and vacating his sentence for that offense, we are remanding the cause for a new trial on that charge. Therefore, if he is convicted on remand, the issue of consecutive sentencing could arise again. Thus, we feel compelled to discuss this issue.

The relevant statutory law concerning the above issue states that the

"court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(b) (now 730 ILCS 5/5—8—4(b) (West 1992)).)

In the record of the sentencing hearing, the circuit court explicitly finds that defendant's character and history require a consecutive sentence in order to protect the public from his criminal tendencies. The court found defendant to be a "remorseless individual and certainly dangerous." It also found that the

"[r]ehabilitation of [defendant] at age 35 is absolutely out of the question and beyond consideration in the criminal justice system. *** [Defendant] cannot be rehabilitated. He committed the most serious felonies while on parole, a short time after he was released from the penitentiary."

We hold that, taking into consideration the nature and circumstances of this case and defendant's background and character, should he be found guilty of a sex offense on retrial, it is within the circuit court's discretion to impose a sentence on that conviction which will run consecutive to his sentence for the robbery conviction.

For the foregoing reasons, the robbery conviction and sentence of the circuit court of Cook County are affirmed, the attempted aggravated criminal sexual assault conviction is reversed and the sentence vacated and this cause is remanded for a new trial on the sex offense.

Affirmed in part; reversed and vacated in part; and remanded for a new trial.

O'CONNOR and MANNING, JJ., concur.