THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BYRON HANNA, Defendant-Appellant.

First District (5th Division)   No. 1—86—0139

Opinion filed June 30, 1989.

Steven Clark and Paul Alexander Rogers, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Nancy Black, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant, Byron Hanna, was convicted of attempt (armed robbery) and murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1(a)(3)) in the shooting death of James Wiley. Defendant was sentenced to concurrent prison terms of 55 years for murder and 15 years for attempt. Defendant contends his convictions should be

reversed and the cause retried for the following reasons: the trial judge erroneously rejected defendant's pretrial waiver of a jury for the sentencing phase of trial and permitted the State to question the venire regarding the death penalty; the State made improper comments in rebuttal argument concerning inadmissable evidence; and presentation of testimony of the victim's nine-year-old daughter and mother was irrelevant and was designed only to arouse the jury's sympathy. Alternatively, defendant argues his sentence for murder should be reduced.

We affirm defendant's convictions. However, we conclude the extended prison sentence imposed for murder was an abuse of discretion and, therefore, remand that portion of the judgment with directions.

The record establishes that in the afternoon of August 1, 1983, defendant attempted to rob James Wiley at gunpoint while inside a currency exchange at 69th and Halsted Streets in Chicago. Eyewitnesses established that defendant had been inside the currency exchange and had observed Wiley cash his Veteran's Administration education check at a teller window. The defendant approached Wiley as Wiley was exiting the currency exchange. A struggle ensued. At least four gunshots were fired. Both Wiley and the defendant were struck by bullets. Wiley died shortly thereafter.

Other facts pertinent to issues raised on appeal are summarized within the context of our discussion of those issues.

## I

Because defendant was charged with a capital crime, the State filed a pretrial motion to examine the venire regarding imposition of the death penalty pursuant to *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. In response, defendant sought to waive his right to have a jury consider sentencing, if convicted, during that phase of trial. The trial judge refused to accept the waiver. In questioning the venire, eight prospective jurors were excused based on their attitudes about the death penalty.

Trial proceeded before the jury. After defendant was found guilty, he was permitted to waive the jury for sentencing purposes.

Defendant now contends that in refusing to accept the pretrial waiver of a sentencing jury, the trial judge deprived defendant of a fair trial by an impartial jury in violation of Federal and State constitutions. Defendant relies principally on *People ex rel. Daley v. Hett* (1986), 113 Ill. 2d 75, 495 N.E.2d 513.

*Hett* involved consolidated cases in which the supreme court considered whether trial judges could properly accept defendants' pretrial

waivers of sentencing juries in capital cases and, if so, had discretion to preclude the State from death-qualifying prospective jurors. (*Hett,* 113 Ill. 2d at 77, 495 N.E.2d at 514.) To answer that question, the supreme court examined the capital sentencing statute permitting waiver of juries for the sentencing phase of trial in capital cases. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(d).) The court observed that the language of the statute neither limited defendants' rights to waive sentencing juries nor designated when the waiver could be exercised and, therefore, held the acceptance of waivers in each case was within the courts' discretionary power. (*Hett,* 113 Ill. 2d at 81-82, 495 N.E.2d at 516.) Further, the supreme court reasoned that because the trial judges had statutory authority to accept the waivers, the State's right to question prospective jurors regarding the death penalty pursuant to *Witherspoon* was inapplicable. *Hett,* 113 Ill. 2d at 82, 495 N.E.2d at 516.

The supreme court has directed that its decision in *Hett* is not to be retroactively applied "insofar as it can be read to prohibit death-penalty questioning subsequent to acceptance of a pretrial waiver of the sentencing jury." (*People v. Erickson* (1987), 117 Ill. 2d 271, 291-92, 513 N.E.2d 367, 375.) In *Erickson,* the trial judge accepted defendant's sentencing jury waiver after defendant had been convicted before a jury in the guilt phase of his capital trial. Defendant's pretrial waiver had been refused and the State had been permitted to question the venire pursuant to *Witherspoon.*

On appeal before the supreme court, defendant relied on *Hett* and raised the next logical question: whether the trial court was required to accept the pretrial waiver. (*Erickson,* 117 Ill. 2d at 287, 513 N.E.2d at 374.) The supreme court concluded that, where the trial court ascertains the waiver is voluntary and knowing, it must be accepted. (*Erickson,* 117 Ill. 2d at 287, 513 N.E.2d at 374.) Left unanswered was whether the exercise of a valid waiver should prohibit the State from questioning prospective jurors pursuant to *Witherspoon.* (*Erickson,* 117 Ill. 2d at 288, 513 N.E.2d at 374.) The court declined to address the issue reasoning that "even if *Hett* were read to prohibit death-penalty questioning of prospective jurors where the sentencing jury is waived prior to trial, it would not apply retroactively to defendant's case." (*Erickson,* 117 Ill. 2d at 288, 513 N.E.2d at 374.) Defendant was therefore not entitled to a new trial either because his pretrial sentencing jury waiver was refused or because the State was allowed to query prospective jurors concerning the death penalty. *Erickson,* 117 Ill. 2d at 291-92, 513 N.E.2d at 375-76.

In *dicta,* the court noted that even if *Hett* applied, defendant

would not necessarily be entitled to a new trial. The court observed, "[i]t is well established that a jury questioned regarding imposition of the death penalty is presumed to be a fair jury on the issue of guilt or innocence." (*Erickson*, 117 Ill. 2d at 292, 513 N.E.2d at 375-76.) Thus, unless defendant could overcome the presumption, by demonstrating the State's questioning of the venire produced an unfair jury, defendant would fare no better under a retroactive application of *Hett* even where *Hett* might be read to prohibit death-penalty questioning subsequent to acceptance of defendant's pretrial waiver. *Erickson*, 117 Ill. 2d at 292, 513 N.E.2d at 375-76.

In *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183, the supreme court reaffirmed its decision regarding retroactive application of *Hett* in a case having pertinent facts similar to *Erickson*. As in *Erickson*, defendant's pretrial waiver of a sentencing jury in his capital case was denied, the State was permitted to question the venire pursuant to *Witherspoon*, defendant was subsequently convicted by a jury, and defendant then was allowed to waive the jury for sentencing purposes. The court restated its holding in *Erickson*, noting the opinion in *Hett* was filed on June 30, 1986. Defendant's trial in the case before the court had commenced on September 10, 1984, 21 months before *Hett* was decided and, therefore, defendant was not entitled to a new trial. *Shum*, 117 Ill. 2d at 338, 512 N.E.2d at 1189-90.

■ Defendant Hanna's trial in the case at bar commenced on October 28, 1985. Defendant tendered his sentencing jury waiver in response to the State's motion to question the venire pursuant to *Witherspoon* on that date. Because the decision in *Hett* was filed eight months after commencement of defendant's trial, in accordance with the holdings in *Erickson* and *Shum*, we therefore determine *Hett* can have no application here. Moreover, we must presume that, although questioned regarding imposition of the death penalty, the jury was fair. As we determine defendant has made no showing to rebut that presumption, our conclusion would not differ even if *Hett* was applied retroactively.

## II

During its case in chief, the State sought to have Chicago police officer Annise Fuller testify as to the content of two statements made by Wiley to her after being summoned to the scene of the crime. Specifically, the statements were, "He [the defendant] tried to take my money" and "[T]ake care of my kids."

Following a hearing outside of the jury's presence, the trial court ruled both statements were inadmissible as evidence either as dying

declarations or excited utterances. However, the court permitted Fuller to testify as to whether or not Wiley had said anything. The trial court cautioned Fuller not to reveal the content of the statements.

Fuller proceeded to testify that upon entering the currency exchange, she observed Wiley and the defendant lying on the floor. Fuller stated that when she assisted Wiley up off of the floor, he said something to her. Fuller acknowledged that immediately thereafter she said something to her partner, Nathaniel Patterson, who then placed defendant under arrest. Fuller testified she helped Wiley walk over to a bench. Fuller stated that, at the bench, Wiley again made a statement to her. Fuller stated she then went outside to Wiley's car, where Wiley's children were waiting, and tended to them.

During rebuttal argument at the close of trial, the State made the following references to Fuller's testimony:

"[Assistant State's Attorney]: I am going to discuss the other witnesses for a second. We produced 14 witnesses on the stand. Let's discuss for a minute Number 15, [who] didn't quite take the stand. But you ladies and gentlemen are entitled to take your common sense back to the jury room to interpret the evidence.

The 15th witness that you didn't actually hear from, but you can consider, is James Wiley.

Now here is what we know. James Wiley cashed his check. He went to the door, he got held up, he struggled, he got shot. But we know that he spoke before he died.

[Defendant's Counsel]: Objection, Judge.

THE COURT: Objection overruled.

Counsel may argue reasonable inferences to be drawn from the testimony which is before the Jury.

[Assistant State's Attorney]: The first time that he spoke, Officer Fuller was attending him. He spoke to Officer Fuller. He said something and the next thing that happened was Officer Fuller said to her partner, Officer Patterson, 'Place that man under arrest.'

I leave it to the 12 of you. I think you know what he said.

[Defendant's Counsel]: Objection, Judge.

THE COURT: Objection overruled. Counsel may proceed.

\* \* \*

[Assistant State's Attorney]: I want you to remember at that point, Officer Fuller \*\*\* [had] seen the Defendant there on the floor and she [had] seen the victim, Byron Hanna [*sic*], and

she *** carrie[d] James Wiley over to the bench[.] *** [H]e [was] speaking slowly and hauntingly and gasping for breath and he [said] something else to her. *** The last thing that he ever said.

What's the next thing that Officer Fuller did? She went outside to the kids in the car.

* * *

What did James Wiley talk about just before he died? What did he say to her?

Again, I'll leave it to you, ladies and gentlemen."

Defendant now contends the State's remarks above were improper and in direct violation of the trial court's ruling prohibiting testimony as to the content of the statements. Defendant argues *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773, is closely on point.

*Connors* similarly involved comments made by the State with reference to activity immediately following an individual's statement, the content of which was precluded. During trial in *Connors*, the State questioned police officer Hofmann about a conversation he had with Willie Williams, who, along with the defendant, had been arrested for armed robbery. Without addressing its content, Hoffman confirmed that he had spoken with Williams. Based on his answer, the State then asked Hofmann where, if anywhere, his partner had gone. In that manner, the State established that the police went to a particular apartment and recovered a coat taken in the robbery and a gun.

In its closing argument, the State commented:

" 'Officer Hoffman went on to state that he then asked that individual he was talking to, Willie Williams, where the coat [sic] that George Connors was carrying, and Officer Hofmann stated that he responded to that question.

Immediately after responding to that question the Officer went to Apartment 207.

Ladies and gentlemen, there are rules of evidence which prohibit us from introducing certain evidence.

[Defendant's Counsel]: Objection.

THE COURT: Objection overruled. You may proceed.

[Assistant State's Attorney]: We can only get in legitimate testimony. It is for you people to draw the proper conclusion that may be drawn.' " *Connors*, 82 Ill. App. 3d at 316-17, 402 N.E.2d at 777.

On appeal, the State argued that although its remark in reference to rules precluding introduction of certain evidence was "question-

able," reversal was unwarranted in view of overwhelming evidence against defendant. The State cited *People v. Bracy* (1973), 14 Ill. App. 3d 495, 302 N.E.2d 747. The appellate court agreed with that general proposition of law, but distinguished the case before it from *Bracy*.

First, the appellate court noted the trial judge had overruled defendant's counsel's objection and had thereby judicially validated the State's suggestions to the jury. More importantly, in *Bracy*, the State's comments were made during rebuttal, in direct response to defense counsel's closing argument. Last, evidence referred to in *Bracy* did not concern speculation of the content of an individual's statements. *Connors*, 82 Ill. App. 3d at 321, 402 N.E.2d at 779.

We have carefully studied the decision in *Connors*. We note that in *Connors*, the State's comments regarding Williams' statement informed the jury, as a matter of fact, that the State had positive evidence but was precluded from presenting it to the jury. In the instant case, the State's comments might be characterized as more subtle. Rather than indicating that the State knew, but could not legally present, the content of Wiley's statements, the State encouraged the jury to draw their own inescapable conclusions. We therefore do not agree that *Connors* is necessarily dispositive under the facts presented here.

■ We are mindful of the latitude permitted in closing argument and are well aware of the extent of permissible inference which may be drawn from evidence. Nevertheless, we believe the State's remarks at trial went beyond the scope of proper comment. The State's remarks amounted to an invitation to the jury to conclusively determine, as proved by conduct immediately following, the content of statements which the State had been prohibited from presenting. In effect, what the State was precluded from presenting directly through Fuller's testimony at trial, it sought to accomplish indirectly through suggestion during rebuttal argument. It is precisely that aspect of the State's comments which we find disturbing.

Almost equally troublesome, however, is ascertaining why the State is compelled to engage in such tactics in cases such as this where overwhelming evidence of the defendant's guilt exists. In so doing, the State risks wasting judicial resources and squandering public finances in an otherwise avoidable second trial, where the occasioned delay may jeopardize presentation of the parties' proof.

■ However, although we consider the State's comments in rebuttal improper, we decline to disturb defendant's conviction because, after reviewing the record, we conclude the verdict would not have been different had the comments not been made. See *People v. Spann*

(1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051.

This was not a close case. No less than three of the tellers working in the currency exchange on August 1, 1983, witnessed defendant's attempt to rob Wiley. All three testified to the ensuing struggle. One of the tellers, Cherry Parker, stated she had observed defendant prior to the incident. He was unkempt, had a brown paper bag with him, and appeared to be loitering inside the currency exchange until Wiley had cashed his check. Wiley had nothing in his hands. Clarissa Brown, who had waited on Wiley, witnessed defendant approach Wiley from behind, as he attempted to exit the currency exchange, and place his left arm around Wiley's neck. Parker stated defendant had the paper bag in his right hand and was holding it to Wiley's side. As Wiley struggled to get free, a gun fired. Parker saw defendant holding the gun. The struggle continued as the two men fell to the floor. More gunshots followed.

We find it unnecessary to further summarize the testimony here. We are satisfied after reviewing the entirety of the record that reversal in the instant case would serve no purpose.

## III

At trial, Wiley's nine-year-old daughter, Danielle, was allowed to testify for the State over defendant's counsel's objection that her testimony was intended only to evoke the jury's sympathy. The trial judge permitted Danielle to testify after the State explained her testimony was important to establish what Wiley was wearing, what he had in his pockets, and what, if anything, he was carrying when he entered the currency exchange. The apparent purpose of that testimony was to show Wiley was not carrying, nor had concealed on his person, a gun.

The trial judge also permitted Wiley's mother to testify for the State over a similar defense objection. Wiley's mother stated Wiley's Veteran's Administration education check was delivered to her home and that Wiley picked up the check on August 1, 1983, and left for the currency exchange with his children. She stated Wiley was wearing a jogging suit.

On appeal, defendant contends the trial court erred in permitting the testimony of Danielle and Wiley's mother. At least, defendant argues, the trial court should have precluded portions of that testimony. Specifically, defendant points to Danielle's testimony regarding a family trip to the zoo on August 1, 1983, and Wiley's mother's testimony regarding how many children she had, the address where Wiley grew up, and whether Wiley attended college.

■ We do not agree allowance of the testimony of Danielle and of Wiley's mother provides a basis to disturb defendant's convictions. First, we find sound basis in the record for the admission, generally, of Danielle's and Wiley's mother's testimony. That evidence was important to establish Wiley's reason for being in the currency exchange on August 1, 1983, and to show that he did not have a gun with him. Moreover, even assuming we agreed that certain aspects of Danielle's and Wiley's mother's testimony was of questionable relevance, reversal would not be warranted because, as we have previously stated, the evidence of defendant's guilt in this case was overwhelming. See *People v. Jones* (1982), 108 Ill. App. 3d 880, 884, 439 N.E.2d 1011, 1015.

## IV

At the sentencing hearing following defendant's conviction, the trial judge considered that defendant acknowledged he intended only to rob the victim, not to kill him. Nevertheless, the trial judge determined that an extended term of imprisonment was warranted. Without otherwise enumerating the basis for the length of sentence, the trial judge imposed a prison term of 55 years for murder.

Defendant argues that an extended sentence is not supported by the facts of the case and constituted an abuse of discretion. We must agree.

■ Under section 5—8—2 of the Unified Code of Corrections, a sentence for murder cannot exceed the maximum term of 40 years' imprisonment, as set out in section 5—8—1, unless aggravating factors, as set out in section 5—5—3.2(b), are found to be present by the trial judge. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—2(a)(1), 1005—8—1(a)(1), 1005—5—3.2(b)(2).) Where specific aggravating factors are found, the term may be extended to 80 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(1).) Relevant here, an extended prison term would have been justified where the offense was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).

In the instant case, the trial judge stated he considered the requisite aggravating factors in imposing the extended sentence. However, he did not state what those specific considerations were. Without benefit of enumeration in the record of those considerations, we have difficulty understanding why the trial judge determined an extended prison term was warranted under the circumstances of Wiley's murder.

The record does not reveal more than that defendant intended to rob Wiley in the currency exchange and utilized a loaded gun to effec-

tuate that purpose. That Wiley was shot and died as a direct result of his refusal to submit to defendant constitutes a murder for which defendant deserves incarceration. However, beyond those facts, Wiley's murder, although indeed tragic, was unaccompanied by any circumstances which would justify an extended sentence under section 5—5—3.2(b)(2).

■ We therefore vacate defendant's sentence for murder and remand the cause to the circuit court with directions to conduct a hearing to determine an appropriate non–extended-term sentence for defendant's murder conviction.

Affirmed in part; vacated in part and remanded with directions.

MURRAY, P.J., and COCCIA, J., concur.