THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GLEN VERSER, Defendant-Appellant.
First District (3rd Division)   No. 1—87—1512

Opinion filed June 20, 1990.

Karen Daniel, of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Pradeep Roy-Singh, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Glen Verser, was convicted of the murder and attempted armed robbery of Ismael Nunez and the attempted murder, attempted armed robbery and aggravated battery of Silvestre Compos. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3), 8—4, 18—2(a), 12—4(a), 12—4(b)(1).) Defendant was concurrently sentenced to an extended term of 60 years for murder, an extended term of 60 years for attempted murder, and two maximum nonextended prison terms of 15 years each for the attempted armed robberies. The aggravated battery convictions merged into the attempted murder conviction.

On appeal, defendant contends that both of the extended-term sentences must be vacated because the trial court erroneously relied upon serious bodily harm and compensation as aggravating factors. Defendant further contends that the extended-term sentence for murder must be vacated because the trial court abused its discretion in

finding that his conduct was exceptionally brutal or heinous. Finally, he contends that the extended-term sentence for attempted murder must be vacated pursuant to *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569, because attempted murder was not the most serious offense for which he was convicted.

On the evening of November 29, 1985, in the parking lot of the Casa Rita Restaurant at 1141 North Ashland in Chicago, defendant fatally shot Ismael Nunez and shot and wounded Silvestre Compos during a robbery attempt. Earlier in the evening defendant had picked up a gun and had told his friend, Albert Pigram, "Let's go get some money." They met Vinada Robinson, and defendant then apparently placed the gun underneath the hood of the car. They then drove around for awhile.

Meanwhile, Nunez and Compos had been driving around in a van. They had stopped at numerous taverns and had purchased 24 cans of beer. At one point, their van passed the car containing defendant, Pigram, and Robinson. Compos was drinking in the van, and defendant said, "Those are the ones."

When the van proceeded to the restaurant parking lot, defendant's group followed. Defendant exited the car and approached its hood, evidently to retrieve his .357 magnum gun. Defendant or Pigram then opened the driver's door of the van, and they confronted Nunez and Compos. Nunez was sitting in the driver's seat, and Compos was sitting in the passenger's seat. Defendant announced a "stick-up" and demanded their money. Pigram went around the van and opened the passenger's door. Compos, who spoke little English, said that he did not have any money. Either Compos or Nunez also hollered, "No comprende." When Compos tried to kick Pigram, defendant held the gun in one hand and shot Compos once in the back, lacerating his right kidney and perforating his colon. As Compos slumped out of the van and onto the pavement, Nunez tried to grab the gun away from defendant. Defendant, however, pushed him, took two steps back and, holding the gun in both hands, aimed it at Nunez and fatally shot him once in the left side of the chest. Pigram, who already had returned to the getaway car, noticed that defendant walked back to the car 15 seconds later with the gun dangling down at his side. Defendant suggested to Pigram and Robinson several times that they had not seen anything. Defendant also stated, "Keep this to yourself" and "that's all in the game." After they had dropped off Robinson, defendant told Pigram, "Let us go get some more," and they drove around the Logan Square area. When defendant drove Pigram home, he again told Pigram, "Keep this to yourself." According

to Robinson, when he saw defendant the next day defendant was "bragging about what he had done, as if it was [*sic*] a joke." Defendant subsequently warned Robinson not to testify in court.

When the police found Nunez and Compos, Nunez had no wallet, identification or money, and coins were strewn on the ground near Compos. Nunez was found sitting slumped in the driver's seat of the van.

At the conclusion of the trial, defendant was found guilty of the murder and attempted armed robbery of Nunez and the attempted murder, attempted armed robbery and aggravated battery of Compos. During sentencing proceedings, the trial court found that defendant was eligible for the death penalty. In aggravation, the assistant State's Attorney introduced certified copies of defendant's three prior felony convictions (two for theft and one for robbery) and pointed out that defendant was on probation for the prior offenses at the time that he committed the crimes in the case at bar. In arguing that defendant should be sentenced to death, the assistant State's Attorney observed that defendant had been given an opportunity to rehabilitate himself by being placed on probation for his previous crimes, but that he "spit right in the face of the judicial system" and "went on the prowl" while still on probation for three felonies. The prosecutor argued further that defendant's conduct was heinous because he had shot Nunez and Compos "point blank, in a cold blooded, ruthless, unmerciful fashion."

In mitigation, defense counsel argued that the prior felony convictions were six days apart, that defendant had no drug or alcohol problems, that he was capable of rehabilitation, that he had been employed at one job for a year and at another job for four months, that his employer would testify that he was trustworthy and a good worker, that his "very religious" family was present in court, and that he was intelligent, independent, "very well kept," "neat," "clean," and "well dressed."

Defendant requested the court's mercy and stated that his "heart [went] out to the victim's family."

The trial court made the following remarks in imposing defendant's sentences:

> "THE COURT: In the matter of the People versus Glen verser [*sic*], the Court having reviewed the facts and circumstances and the evidence heard in this case and the nature of the finding of guilty of Mr. Verser; the Court having reviewed the pre-sentence investigation prepared by the Adult Probation Department; the Court having reviewed the prior criminal his-

tory of the Defendant;

The Court considering the statement of the Defendant, also considering the arguments of counsel; the Court has reviewed all of the statutory factors in aggravation, specifically, the Defendant's conduct, cause [sic] or threatened serious bodily harm;

The Defendant received compensation for committing the offense at that time. There is no question about, number 1, his conduct was of the most serious nature in that he caused the death of Mr. Nunez. And he also caused the injury by virtue of the attempt murder of Mr. Compos.

Number 2, the Defendant received compensation for committing the offense. He was in the process of committing armed robbery upon those individuals.

Number 3, the Defendant does have a prior history of criminal activity, having been placed on probation for 3 prior convictions.

Number 7, the sentence is necessary to deter others from committing the same crime. Those factors I reviewed, the statutory factors; specificly [sic] to the conduct of Mr. Verser. Those are the factors I reviewed that apply to the conduct of Mr. Verser.

I have reviewed all of the factors in mitigation specifically set forth in the statute. I do not find any of those factors in mitigation applicable to the Defendant in this case.

The statute specifically provides that where the conduct of the individual and the results of his conduct are that when a defendant is convicted of any felony and the court finds that the offense is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty; specifically finding that with regard to the facts and the circumstances of the shooting of Mr. Sylvestry [sic] Compos in the back while in the commission of a forcible felony of attempt armed robbery, are indicative of brutal and heinous behavior and indicative of wanton cruelty.

The Court further finds the facts and circumstances surrounding the murder of Ishmael [sic] Nunez, while in the commission of an armed robbery are also indicative of brutal and heinous behavior and indicative of wanton cruelty.

Considering all these factors, the 4 counts of murder, the sentence of this Court is 60 years in the Illinois Department of Corrections for the murder of Ishmael [sic] Nunez. For the at-

tempt murder of Sylvestry [sic] Compos, attempt murder being a Class X felony, the Doctrine of Extended Term applies. The sentence of the Court will be 60 years in the Illinois Department of Corrections. That to run concurrent with the sentence for the murder of Mr. Nunez. The counts of aggravated battery will merge with the count of attempt murder.

There were 2 counts of attempt armed robbery, for the armed robbery of Ishmael [sic] Nunez and for the attempt armed robbery of Sylvestry [sic] Compos, the sentence of the Court will be 15 years in the Illinois Department of Corrections, as to each count. And that again is to run concurrent with the 60 years sentence for the murder of Ishmael [sic] Nunez, and the 60 years sentence for the attempt murder of Sylvestry [sic] Compos, all sentences to run concurrent."

Defendant then filed a motion for a new sentencing hearing, contending that the crimes were not exceptionally brutal or heinous and that the court erroneously had relied upon compensation as an aggravating factor. In denying defendant's motion, the court stated as follows:

"I believe the statement I made was not that the defendant would receive compensation but he was attempting to gain compensation, that being the moneys he was attempting to obtain in robbing the people [sic] that was murdered and the person that was shot.

* * *

Any time you shoot somebody in the back, it is brutal and heinous behavior, and any time you shoot somebody in the heart and kill them is brutal and heinous behavior."

The first issue on appeal is whether the trial court erroneously relied upon serious bodily harm as an aggravating factor during sentencing by improperly focusing upon the fact that Nunez died. Section 5—5—3.2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a)) provides in part as follows:

"Factors in Aggravation. (a) The following factors shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence under Section 5—8—1:

(1) the defendant's conduct caused or threatened serious harm;

(2) the defendant received compensation for committing the offense;

(3) the defendant has a history of prior delinquency or crim-

inal activity;

\* \* \*

(7) the sentence is necessary to deter others from committing the same crime; [and]

\* \* \*

(10) \*\*\* the defendant was convicted of a felony committed while he was serving a period of probation or conditional discharge for a prior felony."

In a prosecution for murder or manslaughter, it is improper for a sentencing court to consider the victim's death in applying the statutory aggravating factor that defendant caused serious bodily harm to the victim, because death is implicit in the offenses of murder and manslaughter and the legislature took death into account when it established the range of penalties for the crimes. (See *People v. Saldivar* (1986), 113 Ill. 2d 256, 272, 497 N.E.2d 1138; *People v. Tompkins* (1987), 155 Ill. App. 3d 380, 382-83, 508 N.E.2d 481.) However, the trial court's perfunctory observation that defendant "has murdered a person" or the trial court's simple acknowledgment that the victim died does not establish that the trial court improperly considered death as an aggravating factor. (*People v. Bennett* (1987), 159 Ill. App. 3d 172, 185, 511 N.E.2d 1340; *People v. McPherson* (1985), 136 Ill. App. 3d 313, 317, 483 N.E.2d 592.) In *McPherson*, the court explained:

"[I]t is unrealistic to suggest that the judge in sentencing the defendant must avoid mentioning the fact that someone has died or risk committing reversible error." (136 Ill. App. 3d at 317.)

Furthermore, a sentencing court may consider the force employed and the physical manner in which defendant caused the victim's death (*People v. Saldivar*, 113 Ill. 2d at 271; *People v. Crow* (1988), 168 Ill. App. 3d 744, 756-57, 521 N.E.2d 594); and the court may consider the degree of harm even where serious bodily harm is implicit in the offense (*People v. Saldivar*, 113 Ill. 2d at 269; *People v. Floyd* (1987), 160 Ill. App. 3d 80, 87-88, 512 N.E.2d 1378; *People v. Jones* (1986), 140 Ill. App. 3d 660, 674-75, 488 N.E.2d 1363; *People v. Lampton* (1982), 108 Ill. App. 3d 41, 47, 438 N.E.2d 915). Moreover, even where the trial court improperly focused upon the victim's death as an aggravating factor in a murder case, remand for resentencing was not required where the trial court also considered other aggravating factors, such as defendant's prior criminal history, the fact that he was on probation when he committed the murder, and the need to deter others from similar misconduct. (*People v. Moore* (1988), 178 Ill.

App. 3d 531, 544, 533 N.E.2d 463.) Remand for resentencing is not required where the record discloses that the weight accorded to an improper aggravating factor was so insignificant that it did not lead to a greater sentence. *People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338.

■ In the case at bar, the trial court merely acknowledged that Nunez had died, stated that it had considered the circumstances surrounding the murder, and applied the statutory factors to defendant's conduct. Given these circumstances, we conclude that the trial court did not rely upon the victim's death in sentencing defendant.

■ However, even assuming that the trial court focused upon the victim's death in evaluating the statutory aggravating factor of serious bodily harm, we conclude that the error was harmless. The trial court expressly considered other aggravating factors. The court considered defendant's prior criminal convictions and the need for deterrence. The court also considered the facts and circumstances of the case and therefore the manner in which defendant caused the victim's death: defendant held the gun in both hands, took deliberate aim and shot Nunez at close range in the chest. The court further considered the arguments of counsel, in which the assistant State's Attorney observed that defendant was on probation for several prior felony convictions at the time that he committed the crimes in this case. Thus, despite defendant's expression of remorse, he previously had been given an opportunity to rehabilitate himself, but he exhibited recidivism and an unwillingness to do so. The court also considered the presentence investigation report (PSI), which disclosed that defendant had several juvenile adjudications (for unlawful use of a weapon, possession of cannabis and aggravated battery). The PSI disclosed further that defendant admitted that he previously had been a member of a street gang and that his reason for leaving his job was that he "just quit." Finally, the trial court expressly found the statutory factors in mitigation to be inapplicable. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1.) Given the circumstances, we find that any weight improperly placed upon the death of Nunez as an aggravating factor was insignificant.

■ The next issue on appeal is whether the trial court erroneously relied upon compensation as an aggravating factor. A defendant's acquisition of compensation for committing an offense is one of the statutory aggravating factors quoted earlier in this order. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a)(2).) However, a trial court properly may consider compensation as an aggravating factor only where defendant was paid to commit the crime. (*People v. Conover*

(1981), 84 Ill. 2d 400, 405, 419 N.E.2d 906; *People v. Bivens* (1987), 156 Ill. App. 3d 222, 233-34, 509 N.E.2d 640.) A trial court's improper consideration of the proceeds of a robbery as an aggravating factor is harmless error where the trial court considered other factors in aggravation and the weight accorded to the improper factor was insignificant. (*People v. McLean* (1987), 155 Ill. App. 3d 1066, 1073-74, 508 N.E.2d 1196; *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 1019, 439 N.E.2d 1311.) As noted previously, the trial court in the instant case considered other aggravating factors, such as defendant's criminal history, his probationary status at the time that he committed the crimes in the case at bar, and the need for deterrence. Therefore, we conclude that the trial court's reliance upon compensation as an aggravating factor does not require that the cause be remanded for resentencing.

■■ The next issue is whether the trial court abused its discretion in finding defendant's conduct to be exceptionally brutal or heinous and in sentencing defendant to an extended term for murder. An extended-term sentence may be imposed when defendant is convicted of a felony and the court finds that the crime was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).) "Heinous" means " 'hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal' "; "brutal" means " 'grossly ruthless,' " " 'devoid of mercy or compassion: cruel and cold-blooded.' " (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344, quoting Webster's Third New International Dictionary (1971); see also *People v. Johnson* (1987), 159 Ill. App. 3d 991, 1001, 513 N.E.2d 852.) The trial court has discretion to determine what type of conduct constitutes exceptionally brutal or heinous behavior. (*People v. Edens* (1988), 174 Ill. App. 3d 1033, 1045, 529 N.E.2d 617.) In a murder prosecution, the presence of exceptionally brutal or heinous behavior increases the permissible sentence from a 20- to 40-year term to a 40- to 80-year term. (See Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(a)(1)(a), 1005—8—2(a)(1); see also *People v. Thomas* (1988), 168 Ill. App. 3d 113, 118, 522 N.E.2d 253; *People v. Clay* (1984), 124 Ill. App. 3d 140, 153, 463 N.E.2d 929.) In an attempted murder prosecution, the presence of exceptionally brutal or heinous behavior increases the permissible sentence from a 6- to 30-year term to a 30- to 60-year term. See Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(c)(1), 1005—8—1(a)(3), 1005—8—2(a)(2).

In *People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708, a 60-year extended-term sentence for murder was not excessive where the victim died of strangulation and subdural hemorrhage due to blunt

trauma. In *People v. Moritz* (1988), 173 Ill. App. 3d 498, 527 N.E.2d 1102, a 70-year extended term for murder was not excessive where the defendant abducted the victim by forcing her into a car, searched for an isolated location, shot her twice, and then drove off in her car. In *People v. Johnson* (1987), 159 Ill. App. 3d 991, 513 N.E.2d 852, a 60-year extended-term sentence for murder was not excessive and defendant's behavior was exceptionally brutal or heinous where the defendant became angry during an armed robbery when the murder victim complied with the request for his money and wallet by throwing them on the floor. The defendant told the victim to walk out the door and then shot him in the back of the head.

On the other hand in *People v. Hanna* (1989), 185 Ill. App. 3d 1069, 542 N.E.2d 131, the defendant also hunted for an armed robbery victim with a concealed gun. He also shot his victim at close range after the victim resisted. In that case the court stated, "Wiley's murder, although indeed tragic, was unaccompanied by any circumstances which would justify an extended sentence." (*Hanna*, 185 Ill. App. 3d at 1079.) In *People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025, the victim and his girlfriend were in a car stopped at a traffic signal. Defendant pointed a gun at the victim. The victim told the two men to "be cool, we'll give you what you want." Defendant then shot the victim in the head and hit the woman in the eye with his gun. The supreme court stated:

> "Although the victim was defenseless and the defendant could have achieved his goal of robbing the victim and the victim's girlfriend without killing the victim, every single murder is by nature unnecessary; section 5—5—3.2(b)(2), however, requires that the murder be 'exceptionally' brutal and heinous. All murders are brutal or heinous to a certain degree. Moreover, many murdered robbery victims are defenseless when killed. Section 5—8—2, however, allowing for extended-term sentences, 'was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence.' " *Andrews*, 132 Ill. 2d at 456-66.

In this case there is no evidence in the record that the defendant indicated prior to the attempted robbery that he intended to kill the victim. The defendant also stated his remorse for the victim's family at the sentencing hearing. Also, the prior felony convictions of the defendant were six days apart. Therefore, we hold that the trial court abused its discretion in finding defendant's conduct to be exceptionally brutal or heinous and entering an extended-term sentence.

■■■ The final issue is whether defendant's extended-term sentence for attempted murder must be vacated pursuant to *People v. Jordan* (1984), 103 Ill. 2d 192, 205-06, 469 N.E.2d 569. Under section 5—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)), a trial court is empowered to impose an extended-term sentence only on those offenses which are within the most serious class of offenses for which defendant was convicted. Section 5—8—2(a) states:

> "A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 *for the class of the most serious offense of which the offender was convicted* unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2(a).)

In *Jordan,* the court held that a defendant who has been convicted of multiple offenses of different classes may be sentenced to an extended term only for a conviction within the most serious class and then only if the offense was accompanied by exceptionally heinous or brutal behavior. (*People v. Jordan,* 103 Ill. 2d at 205-06; see also *People v. Willis* (1989), 184 Ill. App. 3d 1033, 1046-47; *People v. Clemons* (1989), 179 Ill. App. 3d 667, 674, 534 N.E.2d 676; *People v. Bivens* (1987), 156 Ill. App. 3d 222, 234, 509 N.E.2d 640.) Murder is a more serious offense than attempted murder, which is treated as a Class X offense for sentencing purposes. (Ill. Rev. Stat. 1985, ch. 38, par. 8—4(c)(1).) Relying on *Jordan,* defendant contends that he cannot be sentenced to an extended term for attempted murder because he was sentenced to an extended term for the more serious offense of murder.

■■■ *Jordan,* however, does not prohibit multiple extended-term sentences under certain circumstances, such as where a defendant has been sentenced to death for murder and to an extended term for armed robbery (*People v. Neal* (1985), 111 Ill. 2d 180, 203-05, 489 N.E.2d 845), or where a defendant has been sentenced to life imprisonment for murder and to an extended term for armed robbery (*People v. Young* (1988), 124 Ill. 2d 147, 166, 529 N.E.2d 497), or where defendant had a joint sentencing hearing after separate trials resulting in separate convictions arising out of distinct factual situations (*People v. Berry* (1988), 175 Ill. App. 3d 420, 430, 529 N.E.2d 1001; *People v. Whitson* (1984), 127 Ill. App. 3d 999, 1006, 470 N.E.2d 1054).

In *Jordan* the defendant was sentenced to concurrent extended

terms of imprisonment of 60 years for felony murder by accountability, and 14 years for kidnapping, a Class 2 felony. The supreme court held:

"Accordingly, we hold that the extended term sentence imposed for defendant Jordan's conviction for kidnaping was improper, as that offense did not belong to the most serious class of offense of which he was convicted." *Jordan*, 103 Ill. 2d at 206.

Following the decision in *Jordan*, the appellate courts have vacated or reduced extended terms for less serious felonies where an extended term was imposed for the more serious offense. In *People v. Holiday* (1985), 130 Ill. App. 3d 753, the defendant received an extended term for murder and also extended terms for aggravated battery and armed robbery. The extended terms for aggravated battery and armed robbery were vacated. In *People v. Akins* (1984), 128 Ill. App. 3d 1009, 471 N.E.2d 1003, the defendant received extended terms for automobile theft and armed robbery. The extended term for automobile theft was reduced. In *People v. Bivens* (1987), 156 Ill. App. 3d 222, 509 N.E.2d 640, the defendant was convicted of 10 armed robberies and given an extended term for escape. The court held it was improper to give an extended term for escape.

■■■ In this case, since the defendant was given an extended-term sentence for the most serious offense, murder, he could not be given an extended-term sentence for attempted murder, a less serious class offense. Accordingly, we vacate defendant's extended-term sentences for murder and attempted murder. The cause is remanded for a new sentencing hearing.

Vacated and remanded.

WHITE and FREEMAN, JJ., concur.