**UNITED STATES of America ex rel., Glenn VERSER, Petitioner,**

v.

**Keith O. NELSON, Respondent.**

No. 96 C 7800.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 14, 1997.

See also, 237 Ill.App.3d 1108, 211 Ill.Dec. 455, 655 N.E.2d 484.

Glenn Verser, Dixon, IL, pro se, Nathan Diamond Falk, Law Offices of Nathan Diamond Falk, Chicago, IL, for Petitioner.

Elise F. Cummings, Atty. Gens. Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Following a bench trial, petitioner Glenn Verser ("Verser") was found guilty of murder, attempted murder, aggravated battery and attempted armed robbery on January 22, 1987. He pursued state appellate and post-

conviction remedies without success, and now petitions this court for a writ of habeas corpus under the newly amended 28 U.S.C. § 2254.[1] Verser essentially alleges ineffective assistance of counsel at the trial and appellate level. For the following reasons, Verser's petition is denied.

### RELEVANT BACKGROUND

■ Following a 1987 bench trial in the Circuit Court of Cook County, Verser was convicted of the murder and attempted armed robbery of Ismael Nunez ("Nunez") as well as attempted murder, attempted armed robbery and aggravated battery of Silvestre Compos ("Compos"). The facts leading· to Verser's conviction are set forth below.[2]

On the evening of November 29, 1985, Verser picked up a gun and told his friend, Albert Pigram ("Pigram"), "[l]et's go get some money." After meeting Vinada Robinson ("Robinson"), they drove around for awhile, and Verser apparently placed the gun underneath the hood of the car. Meanwhile, Nunez and Compos had been driving around in a van. They had stopped at numerous taverns and had purchased a case of beer. At one point, their van passed the car containing Verser, Pigram and Robinson. Compos was drinking in the van, and Verser said, "[t]hose are the ones."

The van carrying Nunez and Compos proceeded to the parking lot of the Casa Rita Restaurant at 1141 North Ashland in Chicago. The car carrying Verser, Pigram. and Robinson followed. Verser exited the car and approached its hood, evidently to retrieve his .357 magnum gun. Verser or Pigram then opened the driver's door of the van and confronted Nunez and Compos. Nunez was sitting in the driver's seat, and Compos was sitting in the passenger's seat. Verser announced a "stick-up" and demanded their money. Pigram went around the van and opened the passenger's door. Compos, who spoke little English, said that he did not have any money. Either Compos or Nunez also hollered, "[n]o comprende." ·

When Compos tried to kick Pigram, Verser held the gun in one hand and shot Compos once in the back, lacerating his right kidney and perforating his colon. As Compos slumped out of the van and onto the pavement, Nunez tried to grab the gun away from Verser. Verser, however, pushed him, took two steps back and, holding the gun in both hands, aimed it at Nunez and fatally shot him once in the left side of the chest.

Pigram, who already had returned to the getaway car, noticed that Verser walked back to the car 15 seconds later with the gun dangling down at his side. Verser suggested to Pigram and Robinson several times that they had not seen anything. Verser also stated, "[k]eep this to yourself" and "that's all in the game." After they had dropped off Robinson, Verser told Pigram, "[l]et us go get some more," and they drove around the Logan Square area. When Verser drove Pigram home, he again told Pigram, "[k]eep this to yourself."

When police found Nunez and Compos, Nunez had no wallet, identification or money, and coins were strewn on the ground near Compos. Nunez was found sitting slumped in the driver's seat of the van. According to Robinson, when he saw Verser the next day, Verser was "bragging about what he had done, as if it was a joke." Verser subsequently warned Robinson not to testify in court.

---

1. Verser filed his petition on November 26, 1996, after the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214. Petitioner acknowledges that the AEDPA applies to petitions (such as Verser's) that were filed after April 24, 1996. *See Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

2. The court takes this opinion's factual account from *People v. Verser*, 200 Ill.App.3d 613, 146 Ill.Dec. 263, 558 N.E.2d 226 (1st Dist.1990), the Illinois Appellate Court opinion vacating Verser's sentence on direct appeal. Verser does not challenge those facts. As outlined in *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981), this court thus must presume that these facts are correct for purposes of our review. *See also* 28 U.S.C. § 2254(e)(1) (providing that determinations of factual issues made by state court must be presumed to be correct unless petitioner rebuts presumption by "clear and convincing" evidence).

At the conclusion of the trial, Verser was found guilty of the murder and attempted armed robbery of Nunez and the attempted murder, attempted armed robbery and aggravated battery of Compos. During sentencing proceedings, the trial court found that Verser was eligible for the death penalty. Verser's trial counsel argued in mitigation against such a penalty. The court did not impose the death penalty, instead sentencing Verser to an extended term of 60 years for his murder conviction, an extended term of 60 years for the attempted murder conviction and two nonextended terms of 15 years each on the attempted robbery convictions. Verser's aggravated battery conviction was merged with his attempted murder convictions.

On direct appeal, the Illinois appellate court vacated Verser's extended-term sentences and remanded to the trial court for resentencing. *People v. Verser*, 200 Ill. App.3d 613, 146 Ill.Dec. 263, 558 N.E.2d 226 (1st Dist.1990). On remand, Verser received 40 years for the murder conviction and 20 years for the attempted murder to be served consecutively to each other and concurrently with the previously entered fifteen-year terms of attempted armed robbery. This judgment was affirmed by the Illinois Appellate Court in an unpublished order, *People v. Verser*, 1–90–3562, and the Illinois Supreme Court denied leave to appeal.

While his petition for leave to appeal was still pending, Verser filed a petition for post-conviction relief, alleging ineffective assistance of both his trial counsel and appellate counsel. The trial court granted the state's motion to dismiss on December 1, 1993. On February 21, 1996, the Illinois Appellate Court issued an unpublished order, *People v. Verser*, 1–94–0032, affirming the dismissal. The Illinois Supreme Court denied Verser's petition for leave to appeal on October 2, 1996. Verser filed this pending habeas petition on November 26, 1996.

### APPLICABLE LAW

■ "When a federal district court reviews a habeas corpus petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. The court does not review a judgment, but the lawfulness of the petitioner's custody simpliciter," *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). A federal court may grant habeas relief "only when there is a violation of federal statutory or constitutional law." *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir.1990).

■ A federal court cannot address the merits of a habeas petition unless the Illinois courts have first had a full and fair opportunity to review the petitioner's claims. *See, e.g., Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.1991). Illinois courts have a full and fair opportunity to consider the claims raised in a habeas petition if: (1) the petitioner has exhausted all available state remedies (the "exhaustion" doctrine); and (2) the petitioner has raised all of his claims during the course of the state proceeding (the "procedural default" doctrine). *Id.* "If the answer to either of these inquiries is 'no,' the petition is barred[.]" *Id.* In this case, the state concedes that Verser has exhausted his state court remedies and raised his instant claim during the course of his state court proceedings.

■ For claims that survive the exhaustion and procedural default analysis, the standard of review is strict. Under the habeas corpus statute as recently amended by the AEDPA, federal courts must deny a petition for habeas corpus with respect to any claim adjudicated on the merits in a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under the amended statute, federal courts must accord "greater deference to the determinations made by state courts than they were required to under the previous law." *Spreitzer v. Peters*, 114 F.3d 1435, 1441 (7th Cir. 1997).

The governing Supreme Court precedent concerning effective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail under *Strickland*, one must show that: (1) counsel's advocacy fell beneath an objective standard of reasonableness, *id.* at 688, 104 S.Ct. at 2064, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *id.*

In short, under the AEDPA, "[O]nly a clear error in applying *Strickland*'s standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir.1997).

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

Verser first argues that his trial counsel's failure to investigate and present certain witnesses constitutes ineffective assistance of counsel. Upon review, this court disagrees.[3]

Vinada Robinson and Albert Pigram both testified at petitioner's trial that they were with the petitioner at the time of the subject crimes.[4] They each testified in detail as eyewitnesses to petitioner's explicit implication in the crimes concerned. Kim Robinson, petitioner's girlfriend, also testified at trial that on the evening of the crime, petitioner came to her house and "dropped off a gun." She testified that an hour or more later, petitioner returned and took the gun and. that later that same evening he again

"dropped off the gun." (Ex. O at 7; Ex. B at 7). In addition, a police detective testified at trial that police recovered a gun from petitioner's premises upon his arrest. (Ex. B at 7.) A firearms identification expert testified that the gun retrieved from petitioner could have been used in the killing and that the gun had live bullets of the type received from the medical examiner's office in the case. (Ex. B at 7, 8.)

The basis for petitioner's ineffective assistance of counsel claim is as follows: petitioner avers in a sworn affidavit that he unsuccessfully asked trial counsel to call as witnesses Juan Johnson, Isabella Nieves and trial counsel's investigator, Floyd Turner.[5] Petitioner also challenges trial counsel's omission to investigate and call the alibi witnesses listed in the co-defendant Pigram's discovery response.[6]

However, even *arguendo* if all petitioner's evidence is accepted as true herein, this court's review of these matters discloses the following:

The Johnson and Nieves affidavits, and the record documents as to Turner do not seek or tend to show that defendant was not implicated, and a participant, in the crimes concerned. The Johnson and Nieves affidavits essentially concern prosecution witness Pigram's puffing as to his own participation in the crime. At best, per their affidavits, these witnesses would merely provide impeachment testimony against one of two companions of the petitioner who testified as eyewitnesses against the petitioner. In view of the significant weight of the evidence against the petitioner, as above described, the impeachment concerned falls short of raising a reasonable probability sufficient to "undermine confidence in the outcome of the

---

**3.** Because Verser cannot satisfy the second prong of the *Strickland* analysis, as will be discussed herein, it has not been considered whether the representation of Verser's trial counsel met the objective standard of reasonableness under the first prong of *Strickland*. *See, e.g., Brumley v. Detella*, 83 F.3d 856, 861 (7th Cir.1996) ("Our case law makes it clear that, in ascertaining whether [the *Strickland*] standard has been met, a habeas court may focus on either prong of this test, as the efficient dispatch of judicial business dictates.").

**4.** Pigram was initially a co-defendant. He plead guilty to armed robbery and received a 10 year prison sentence in exchange for his "truthful testimony" against petitioner. (Ex. O at 5.)

**5.** Trial counsel's affidavit states he was not asked by petitioner to call Johnson or Nieves as witnesses.

**6.** Trial counsel states in his affidavit that he was not made aware of these witnesses.

proceeding" and that "the result of the proceeding would have been different." *Strickland, id.*

■ With regard to the investigator, Turner, Turner had interviewed the prosecution witness Vinada Robinson. Robinson had a quibble with just a few statements attributed to him in a police report and a single impeachment item arose. Our review reveals that the impeachment item was unexculpatory of petitioner's implication in the crime and that the other police report quibbles were of minor and inconsequential matters in the context of the case. Finally, petitioner argued but did not show and we do not perceive how the listed alibi witnesses of a codefendant who later admitted, was convicted and testified as to his participation in the crime, could have been helpful to the petitioner at trial here. Again: this paragraph's items either singly, or cumulatively with the items discussed in the previous paragraph, do not meet the requisite *Strickland* reasonable probability standard heretofore described.

■ As stated, in an ineffective assistance of counsel/*Strickland* legal standard case:

> When a state court applies established law, its decision must be respected unless 'unreasonable.' 28 U.S.C. § 2254(d)(1). ... This means that only a clear error in applying *Strickland*'s standard would support a writ of habeas corpus.

*Holman v. Gilmore,* 126 F.3d at 881.

In reviewing Verser's post-conviction petition, the Illinois Appellate Court addressed the merits of Verser's ineffective assistance claim. In so doing, the court correctly articulated and applied the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). The Appellate Court affirmed the trial court's denial of post-conviction relief.

In short: in light of all of the above, this court concludes that the Illinois Appellate Court reasonably, not unreasonably, applied

established law in rejecting petitioner's effective assistance of trial counsel argument. Further, the Appellate Court plainly did not commit "clear error in applying Strickland's standard," and this habeas corpus claim of Petitioner thus must be denied.[7]

## II. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

Verser also alleges that he was denied effective assistance of appellate counsel. Verser alleges in his own affidavit that he repeatedly requested his appellate counsel to challenge the sufficiency of the evidence that he was guilty beyond a reasonable doubt during his direct appeal. Verser argues that his appellate counsel's failure to raise the argument constituted ineffective assistance of counsel.

■ Under *Mason v. Hanks,* 97 F.3d 887 (7th Cir.1996) and *Gray v. Greer,* 778 F.2d 350 (7th Cir.1985), when a claim of ineffective assistance of appellate counsel is based on that counsel's failure to raise an issue on appeal, the petitioner must meet the two-prong *Strickland* test: (1) that counsel's failure to raise Verser's current claims on appeal was "beyond the realm of reasonable professional judgment within the context of the case," *Mason,* 97 F.3d at 893; and (2) that this failure was prejudicial to him, *id.* "When appellate counsel omits (without legitimate strategic purpose) a significant and obvious issue, we will deem his performance deficient, and when that omitted issue may have resulted in a reversal of the conviction, or an order for a new trial, we will deem the lack of effective assistance prejudicial." *Id.* (omitting citations).

In considering Verser's ineffective assistance of appellate counsel claim, the appellate court in its post conviction review considered a June 2, 1988 letter from Verser's appellate counsel to Verser. That letter, and a prior letter dated April 14, 1988, manifests Verser's counsel's careful examination of the issues raised by Verser. In particular, Ver-

---

7. The petitioner's request for an evidentiary hearing, and single factual reference to the Appellate Court's post conviction opinion, must fail and are implicitly subsumed by virtue of this section's discussion and conclusion.

ser's appellate counsel stated in the June 2 letter:

> Regarding reasonable doubt as a possible issue in your case, I went over the record again as well as the points you raised, but the issue is just not there. However, I do feel that the sentencing issues are good and have a chance of success.[8]

After considering Verser's reasonable doubt argument and his appellate counsel's consideration of that argument, the appellate court in light of the *Strickland* standard found that Verser's ineffective assistance claim lacked merit.

■ Again, this court must respect the state court's decision unless it "involved an unreasonable application of [ ] clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This means that only a "clear error" in applying the standards of *Strickland* will support a writ of habeas corpus.

■ As with his other ineffective assistance claim, Verser cannot successfully make this argument. As set forth earlier herein, there was overwhelming evidence on direct appeal of Verser's guilt beyond a reasonable doubt. Therefore, appellate counsel's considered decision not to raise the claim could hardly be considered beyond the realm of reasonable professional judgment within the context of the case. And the reality also is that Verser was not prejudiced by his counsel's decision not to raise this unmeritorious claim. Thus, the state court's rejection of this ineffective assistance claim cannot be deemed unreasonable or clear error.

### CONCLUSION

In view of the foregoing, the petition for a writ of habeas corpus is denied.

---

8. A reduction of Petitioner's sentence was, in fact, achieved.