NOTICE
Decision filed 04/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240578-U

NO. 5-24-0578

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 13-CF-1978 |
| | ) | |
| DARMEL L. SMITH, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Sholar concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court properly denied defendant leave to file a successive postconviction petition where he failed to demonstrate either cause or prejudice for not raising the issues in his first such petition. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2 Defendant, Darmel L. Smith, appeals the circuit court's order denying leave to file a successive postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), concludes that there is no reasonably meritorious argument that the court erred. Accordingly, it has filed a motion for leave to withdraw as counsel on appeal and a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, and this court has given him ample opportunity to respond. However, he has not done so. After considering the record on appeal and OSAD's motion and supporting

1

memorandum, we agree that there is no issue that could support an appeal. Accordingly, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                 BACKGROUND

¶ 4      Defendant was charged with first degree murder in the death of Sheena Williams. Evidence at trial showed that defendant and Williams were in a relationship, and he lived with her until September 2, 2013, when he moved out.

¶ 5      Sheena's mother, Loretta Williams, who lived next door to her, saw Sheena at around 10 a.m. on September 6, 2013. Loretta became concerned when Sheena did not return when expected and did not return phone calls. She and her other daughter, Takesha, went to Sheena's house and found it locked. They eventually pried open a window enough to allow Takesha's three-year-old daughter, Raniya, to climb in. As soon as Raniya entered the house she began screaming. Loretta and Takesha instructed her how to open the door from the inside. They went in and found Sheena dead with blood coming from her neck. The coroner concluded that Sheena had been strangled and stabbed.

¶ 6      That afternoon, defendant voluntarily went to the police station, where he was interviewed by detectives Kevin Olmstead and Joe Johnston. Defendant said that he and Sheena had dated for two and a half years. He and Sheena had the only keys to the home. Defendant said that he moved out four or five days before the interview because he was tired of dealing with her family next door. He moved to an apartment on Florida Avenue in Urbana. He admitted to the officers that when he moved out of Sheena's house, he stole an iPad from her and sold it the next day to a friend named Carlos. Nevertheless, he told Sheena that he would return the iPad.

¶ 7      Defendant said that, at 2 a.m. on September 6, he went to Sheena's house, using his key to let himself in, but he found no one home. Upon finding the home empty, he was so "pissed off"

2

that he threw away his key to Sheena's house, but he did know where. He assumed Sheena was with her mother next door, but he did not go over there.

¶ 8    Defendant described his activities for the rest of the morning, which included taking a bus to the mall with his brother, Jerrod Smith. Defendant got off the bus at Bellefontaine and Market Streets, approximately 400 feet from Sheena's home.

¶ 9    Video obtained from the mass transit district showed defendant and Jerrod riding the bus. Jerrod handed defendant a phone, which he used to make a call. After he hung up the phone, he opened a small knife and put it to his neck. The parties stipulated that a phone call and a text message to Sheena originated from Jerrod's phone. About five minutes later, defendant got off the bus at Bellefontaine and Market Streets and began walking toward Sheena's house.

¶ 10   Linda Reynolds testified that she saw defendant—a friend of her son—walking at about 11:20 a.m. She gave him a ride to her son's place of employment. The detectives asked defendant why he was wearing different clothes than those depicted in the videos. He eventually admitted that he went home and washed his clothes. However, he did not have enough money to dry them, so he threw them in the closet wet. Officers executing a search warrant found in his closet wet clothes matching those that defendant was wearing in the video. However, no physical evidence was ever found connecting defendant to Sheena or her home.

¶ 11   Without objection, the jury was given, among others, Illinois Pattern Jury Instructions, Criminal, No. 2.03 (hereafter IPI Criminal), on the presumption of innocence, reasonable doubt, and burden of proof; IPI Criminal No. 3.02 on circumstantial evidence; IPI Criminal No. 3.06-3.07 on statements by the defendant; and IPI Criminal No. 26.01, a concluding instruction that provides, *inter alia*, that the verdict must be unanimous. These instructions as given match the standard IPI instructions verbatim.

¶ 12    After deliberating for about two hours, the jury asked for clarification of "reasonable doubt." The court responded that the jurors had received all applicable instructions. Later, the jury requested to see one of the videos, which was played in the courtroom. About an hour later, the jury found defendant guilty. The trial court sentenced him to 52 years' imprisonment.

¶ 13    On direct appeal, defendant argued that the trial court erred by allowing the jury to hear evidence that Sheena had reported the theft of $900 from her months before her murder and that, at sentencing, the court improperly found that defendant was a "sociopath." The Fourth District disagreed and affirmed. *People v. Smith*, 2017 IL App (4th) 150209-U.

¶ 14    Defendant then filed a postconviction petition, arguing that trial counsel was ineffective for failing to seek jury instructions on second degree murder based on serious provocation and for stipulating to certain evidence. He also claimed that the prosecutor misstated the evidence, and that appellate counsel was ineffective for not challenging the sufficiency of the evidence or the trial court's response to the jury question about the definition of reasonable doubt.

¶ 15    The trial court advanced the petition to the second stage and appointed counsel. Counsel filed an amended petition raising some claims in the *pro se* petition but specifically declining to raise issues concerning the second degree murder instruction or the court's answer to the jury question. The court granted the State's motion to dismiss the petition, and the Fourth District affirmed. *People v. Smith*, 2019 IL App (4th) 180570-U.

¶ 16    Defendant later filed a motion for forensic testing of bloody footprints found at the crime scene and for fingerprint testing of Sheena's keys. The State moved to dismiss, arguing that defendant had identified neither items that could be tested nor an accepted scientific testing method that was likely to produce new, noncumulative evidence. The court denied defendant's request and the Fourth District affirmed. *People v. Smith*, 2020 IL App (4th) 190120-U.

4

¶ 17    On March 22, 2024, defendant filed a motion for leave to file a successive postconviction petition. He contended that direct-appeal counsel was ineffective for failing to challenge IPI Criminal No. 3.02, due to its "inconsistency with the governing burden of proof," and potential to confuse the jury when given with IPI Criminal No. 2.03; IPI Criminal No. 3.06-3.07, which constituted a "prejudgment of guilt"; and IPI Criminal 26.01, for "misleading the jury to believe that a verdict is mandatory." Defendant argued that he need not establish cause for failing to raise the issue earlier because the supreme court has held that an unconstitutional statute may be challenged "at any time." The court denied leave to file, and defendant timely appealed.

¶ 18                                    ANALYSIS

¶ 19    OSAD concludes that there is no reasonably meritorious argument that the trial court erred in denying defendant leave to file a successive postconviction petition given that defendant can establish neither cause nor prejudice. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) provides a criminal defendant with a way to establish that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008).

¶ 20    The Act, however, contemplates the filing of only one petition, specifically providing that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2024); *People v. Bailey*, 2017 IL 121450, ¶ 15. To file a successive petition, a defendant must obtain leave of court, which may be granted where the defendant can demonstrate cause for his or her failure to bring the claim in the initial petition and prejudice resulting from that failure.[1] 725 ILCS 5/122-1(f) (West 2024). "Cause" in this context

---

[1] A second situation in which a defendant may file a successive petition is where he or she makes a colorable claim of actual innocence. *People v. Edwards*, 2012 IL 111711, ¶ 23. However, defendant makes no such claim here.

refers to any objective factor, external to the defense, which impeded the petitioner's ability to raise a specific claim in the initial postconviction proceeding. *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002).

¶ 21    Defendant made no argument that he had good cause for not raising the argument in his first petition. He contended only that such a showing was unnecessary because the supreme court has held that a party may challenge the constitutionality of a statute at any time. See *People v. Bryant*, 128 Ill. 2d 448, 454 (1989).

¶ 22    Defendant, however, does not identify any unconstitutional statute. He discusses several pattern jury instructions that he claims are unconstitutional, but his precise contention is that direct-appeal counsel was ineffective for failing to *argue* that the instructions were unconstitutional. Moreover, the instructions are not statutes. We are aware of no case—and defendant cited none—holding that allegedly unconstitutional jury instructions may be challenged at any time.

¶ 23    Clearly, defendant could have argued in his first postconviction petition that direct-appeal counsel was ineffective for failing to challenge the instructions. In fact, defendant's first petition included claims that direct-appeal counsel was ineffective but did not include his current claims. See *Smith*, 2019 IL App (4th) 180570-U, ¶ 43. Thus, defendant has not shown cause for not raising the claims in the initial petition.

¶ 24    Moreover, defendant cannot establish prejudice as the claims are without merit in any event. All of the challenged instructions were taken verbatim from the pattern jury instructions and were given without objection. In a criminal case, the applicable Illinois pattern jury instruction "shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013). Defendant cited no cases—and our research has not revealed any—

holding that any of the challenged instructions is unconstitutional for the reasons given. Defendant advances strained constructions and speculation to argue that the jury might have been confused.

¶ 25 Defendant first argued that IPI Criminal 3.02 was unconstitutional. That instruction provides:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict." IPI Criminal No. 3.02.

¶ 26 Defendant contended that the instruction may have confused the jury because there was no direct evidence of his guilt and thus the direction to consider the circumstantial evidence in light of the "other" evidence was confusing. Defendant, however, reads into the instruction words that it does not contain. The statute directs the jurors to consider circumstantial evidence "together with all the other evidence in the case." It is not limited to direct evidence of the defendant's guilt. The State presented other evidence that did not bear upon defendant's guilt at all, including evidence of the autopsy performed on the victim and the police investigation. This evidence was necessary for the jury to understand the case but had no direct bearing on defendant's guilt. Thus, the jurors would have understood that they were to consider the circumstantial evidence of defendant's guilt together with this other evidence. See *People v. Tapley*, 2020 IL App (2d) 190137, ¶ 81 (jury is presumed to follow the court's instructions).

¶ 27 Defendant further contended that the instruction may have confused the jury regarding the applicable burden of proof. Once again, he apparently finds language in the instruction not apparent to others. The instruction does not direct the jury to apply any specific burden of proof;

7

it simply states the unremarkable principle that the jury should consider circumstantial evidence of the defendant's guilt the same way as any other evidence.

¶ 28    A criminal conviction may be based solely on circumstantial evidence. *People v. Brown*, 2013 IL 114196, ¶ 49. Circumstantial evidence can sustain a conviction if it satisfies proof beyond a reasonable doubt of the elements of the crime charged. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). Thus, allowing a jury to consider circumstantial evidence does not *per se* alter the State's burden of proof. Moreover, defendant's petition did not contend that the evidence was insufficient to prove his guilt beyond a reasonable doubt. Thus, giving the instruction did not violate his constitutional rights.

¶ 29    Defendant apparently takes issue with the supreme court's decision in *People v. Bryant*, 113 Ill. 2d 497 (1986). *Bryant* held that a paragraph formerly included in IPI Criminal 3.02, providing, "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence," should no longer be used. *Bryant*, 113 Ill. 2d at 510. The court noted that the United States Supreme Court had held that such language was not necessary to effectuate the reasonable doubt standard. *Id.* (citing *Holland v. United States*, 348 U.S. 121, 139-40 (1954)). Defendant seems to contend that the now-deleted language was necessary to effectuate the reasonable doubt standard. To the extent defendant disagrees with those decisions, we are without authority to overrule them. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 23 (appellate courts are bound to follow the decisions of our supreme court and lack the authority to overrule them).

¶ 30    Defendant also questions the trial court's giving of IPI Criminal No. 3.06-3.07, which provides:

"You have before you evidence that [(the) (a)] defendant made [a] statement[s] relating to the offense[s] charged in the [(indictment) (information) (complaint)]. It is for you to determine [whether the defendant made the statement[s], and, if so,] what weight should be given to the statement[s]. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." IPI Criminal No. 3.06–3.07.

¶ 31    Defendant argued that the instruction was inappropriate here because his statement was not a confession, but the instruction directed the jury to consider it as such. Once again, defendant seems to read into the instruction words that are not there. The instruction nowhere directs the jury to consider any statement a defendant makes as a confession. Here, the detectives were obviously questioning defendant about Sheena's murder, so his statements concerning his whereabouts on the day of the murder "related" to it even if he denied committing the murder. Further, as OSAD points out, defendant gave evasive and inconsistent answers, which the jury could properly view as incriminating. A false exculpatory statement is probative of consciousness of guilt. *People v. Milka*, 211 Ill. 2d 150, 181 (2004). A false alibi can be a factor in establishing a defendant's guilt beyond a reasonable doubt. *Id.* at 182. Thus, the court did not err in giving the instruction.

¶ 32    Defendant's final contention was that his constitutional rights were infringed when the trial court gave the jury IPI Criminal No. 26.01, which, *inter alia*, informed the court that its verdict must be unanimous. Defendant claimed that this had the effect of coercing a verdict. He insisted that IPI Criminal No. 26.01 "compelled the jury to believe that all their conclusions of the case must be the same, and, that a verdict must be reached thereby convicting the defendant." Unsurprisingly, defendant cited no authority for this startling contention.

9

¶ 33   The Supreme Court has described the unanimity requirement as "a vital right" protected by the Constitution. *Ramos v. Louisiana*, 590 U.S. 83, 90 (2020). "The purpose of jury instructions is to provide the jury with the correct legal principles applicable to the evidence, so that the jury may reach a correct conclusion according to the law and the evidence." *People v. Bannister*, 232 Ill. 2d 52, 81 (2008). It is inconceivable, then, that any court would hold that a defendant's constitutional rights were violated by merely informing the jury of the important principle that its verdict must be unanimous. Indeed, the Illinois Supreme Court has recognized that the instruction is an important "safeguard[ ] *** to ensure juror unanimity." *People v. Jackson*, 2022 IL 127256, ¶ 46.

¶ 34   Defendant does not really explain why IPI Criminal No. 26.01 necessarily compels a verdict convicting defendant. The jury could just as easily reach a unanimous verdict acquitting him. In any event, defendant seems to misapprehend the nature and purpose of jury deliberations. Unanimity does mean that all jurors must immediately agree. The very concept of deliberations implies a certain amount of give-and-take which may make certain jurors uncomfortable. See *United States v. Sterlingov*, 738 F. Supp. 3d 14, 19 (D.D.C. 2024) ("The tendency of jurors to disagree and compromise is merely the product of the vigorous give-and-take within this microcosm of the community." (Internal quotation marks omitted.) (quoting *United States v. Dobson*, 1990 WL 109025, at *2 (D.D.C. July 20, 1990))); *State v. Couch*, 635 P.2d 89, 96 (Utah 1981) ("No court can ensure that, in the give and take of lively jury deliberations, every juror's opinion will be politely heard. We cannot referee the deliberative process.").

¶ 35   Courts have long recognized that the unanimity requirement may have the practical effect of causing some jurors—particularly those in the minority—feeling coerced to change their votes in order to achieve a unanimous verdict. In *People v. Prim*, 53 Ill. 2d 62 (1972), the court

10

considered how to proceed when a jury informs the court that it is deadlocked. The court described the largely discredited practice of giving the jury an "*Allen* charge." *Id.* at 72-73 (citing *Allen v. United States*, 164 U.S. 492 (1896)). The court noted that the criticism "generally centers on the coercive nature of the charge which contains the language, the effect of which is to urge those in the minority on the jury to re-evaluate their positions giving consideration to the fact that the majority of the jury who heard the same evidence have taken a different position." *Id.* at 73.

¶ 36     The court found that the objectionable language of the *Allen* charge was not used in the case before it. *Id.* The court then formulated language to be used in such situations in the future. The so-called *Prim* instruction is now IPI Criminal No. 26.07. If it is not unduly coercive to tell a deadlocked jury to continue deliberating until it reaches a unanimous verdict, it cannot be unduly coercive to tell them in the first instance that their verdict must be unanimous. As a practical matter, the jury must know its ultimate objective before it begins deliberations.

¶ 37                                    CONCLUSION

¶ 38     As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the trial court's judgment.


¶ 39     Motion granted; judgment affirmed.

11